**Edna Mraz, Plaintiff-Appellee, v. Jewel Tea Company, Inc., Defendant-Appellant.**

Gen. No. 53,325.

First District, First Division.

February 26, 1970.

Herbert F. Stride, of Chicago (Herbert F. Stride and William J. Harte, of counsel), for appellee.

Meyers and Matthias, of Chicago (James M. Redding and Edward A. Scott, of counsel), for appellant.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action where plaintiff, a customer in defendant's food store, slipped and fell on a lettuce leaf after leaving a checkout counter. Defendant appeals from a $25,000 jury verdict and judgment in favor of plaintiff.

On appeal "it is defendant's theory that its store was properly maintained in a manner not inherently dangerous; that the floor surfaces were swept and cleaned at regular intervals daily pursuant to management instruction; that the area provided for invitees to enter and depart from the store was well lighted and regularly cleaned and swept; that the vegetable matter, described as being the cause of the accident, in the area where the accident occurred could not be said to have come there as the exclusive result of actions or negligence attributable only to the defendant or its employees; that the defendant violated no legal duty owed to the plaintiff and was guilty of no negligent act charged in the complaint."

Plaintiff, a seventy-two-year-old woman at the time of trial, testified that on March 28, 1966, at about 1:00 p. m., she entered defendant's store at 1922 West 103rd Street in Chicago to make a purchase. She was familiar with the store, having been a customer there for some time, and the store was light and bright. She purchased three steaks and was carrying them and her purse when

she passed through the checkout counter at the front end of the store. She was wearing an ordinary pair of casual shoes with low heels. After she had been checked out by a Mrs. Briggs, she took three or four steps from the checkout counter when she slipped and her foot went out from under her, and she fell in a sitting position. As she was there on the floor she noticed a crushed green vegetable leaf behind her and a dark skid mark on the floor. The leaf was a little bigger than a silver dollar, and she saw a small piece of vegetation on her shoe.

On cross-examination plaintiff testified that she did not see any green thing on the floor before she fell. As she left the checkout counter and was walking toward the door she was looking straight ahead, probably at eye level. She did not look at the floor because she was sure if she had seen anything green she could have walked around it, and she did not purchase any lettuce. The floor was in good condition, and she saw no other debris on the floor after she fell, only the lettuce leaf.

Raymond Pepping, called by plaintiff under section 60 of the Civil Practice Act, testified that he was manager of the store on the date in question, but was not in the store at the time of the occurrence. The employees in the store were under his management and direction. He described in detail the check-out routine. The first time that a customer actually comes in contact with the parcel or groceries is when the Jewel employees and personnel have finished ringing up the bill and have finished bagging it into the various bags. The point where the wrapping or parceling is done is at the point at which the customer is given the bag to take home or given his grocery cart to wheel out to his car. The store had a definite schedule for cleaning, sweeping and mopping. Employees are schooled and told to pick up anything from the floor immediately. In his years of experience he had not seen debris and articles or dirt and

211

other matters lying in the area at the end of the cashier's checkout counter.

Pepping further testified as to the routine and handling of lettuce and other produce. The vegetable counters were located at the east wall, furthest toward the back of the store. Lettuce is brought in by produce boxes, 24 heads to the box. They are then put under refrigeration until such time they are needed and they are processed or trimmed. They are packed in the back room and then brought onto the sales floor for display. Each head of lettuce is individually wrapped in cellophane. The lettuce boxes are salvage and are never used to parcel groceries.

Sharon Vrbousky, called as a witness on behalf of plaintiff, testified that she was a checker at the store on March 28, 1966. Her duties consisted of checking out customers, checking the floors, sweeping the floors and checking customers' carts to be sure there was nothing left in the carts. There was a routine in the store of bringing empty boxes up to the front for use by the cashiers in packaging, and the type of boxes that were brought up included "lettuce boxes, anything from produce." Her instructions were that if she saw a piece of lettuce or anything on the floor, she was to pick it up. On March 28, 1966, she had occasion to sweep the checkout counters in the area in which the occurrence took place. She said, "I don't remember what hour of the morning it was that I swept the area in question. From reading my statement of April 5, 1966, it says I started to sweep the floor about 11:45. That was an approximate time. After I swept the floors I went to lunch. I was not present on the premises when the occurrence took place. I was upstairs having lunch." When she returned from her lunch period, she saw skid marks on the floor, and plaintiff had been taken from the store. On cross-examination she testified that she went to lunch anywhere from 11:00 to 2:00 p. m. She

took an hour for lunch on the day in question. She had finished sweeping just before she went to lunch.

The testimony of other employees of the store shows the following: Edward Collins, an assistant manager, saw plaintiff in a sitting position in the aisle, with a piece of lettuce nearby and a skid mark approximately a foot. Emma Briggs, a cashier, testified that she had checked out plaintiff on the day in question. She did not see defendant fall but saw her after she fell in the area between the third and fourth registers. Patricia Weber, a checker and cashier, testified that the bagging was done next to the cash register for small packages but more usually done at the end of the counter where the packers stood in the area beyond the counter. Rosemary Scalzetti, an assistant service manager, testified that a customer told her a woman had fallen and was sitting in the middle of the floor. She went over and noticed a skid mark about six inches long and that a piece of lettuce was on plaintiff's shoe, a walking-type shoe. Also, John Berndl, a fireman called to the scene in an ambulance, testified that he saw plaintiff sitting on the floor with a skid mark of 13 inches nearby.

Defendant's witnesses included Raymond Pepping and Rosemary Scalzetti. Raymond Pepping testified that the only boxes used for packaging for customers were boxes in which dry groceries had been delivered. Rosemary Scalzetti testified that one of her duties was to see that the floor was clean between the service counters and the plate glass windows in the area where plaintiff fell. She saw a 50-pound size bag next to plaintiff. She saw a skid mark on the floor, and there may have been a little piece of vegetable green on the floor. The floor had been swept four to five times before the occurrence, the last time about five minutes before. All personnel were schooled and instructed to keep the floor clean.

Defendant's witnesses also included Margaret Burka, Emma Briggs, Patricia Weber and Edward Collins.

213

Margaret Burka, a checker and stock girl, testified that one of the employees' duties was to keep the store clean and sweep "when it's necessary." Checkers were instructed to check the customer's cart to see that everything was out of the cart. That would include lettuce leaves. A wastebasket was provided at each counter for debris. On cross-examination she stated that she did not personally see anyone sweep that day. The debris that could be on the floor at the checkout counters could be paper or food or vegetable matter, and that was the type of debris the employees were instructed to clean up.

Emma Briggs, who checked out plaintiff in aisle 2, saw Sharon Vrbousky sweep the front end of the store fifteen minutes to a half hour before the plaintiff fell. She further stated that there were two purposes for checking the customers' carts: one, to see that all the purchases were out of the carts, and the other purpose was for cleanliness.

Patricia Weber saw Mrs. Vrbousky sweep fifteen or twenty minutes before plaintiff fell, and the floor where plaintiff fell was clean. On cross-examination she stated she did not see the vegetable matter on the floor but stated she did see the skid mark. She stated sweeping was done about 1:15, before Mrs. Vrbousky went to lunch. She further stated that a statement that was read to her as of April 11, 1966, was true and correct when she said she did not know if anyone swept the floor prior to the woman falling.

Edward Collins testified that when he observed plaintiff on the floor she was approximately right in the middle of the checkout area in the front end of the store, between the plate glass windows and the checkout counters. He saw a large bag of groceries next to her, which he described as about what was called a 50-pound bag. The floor was clean except for a lettuce leaf. The ordinary routine was to keep the floor swept two or three times daily.

At the conclusion of all the evidence, defendant's motion for a directed verdict was renewed and was again denied by the trial court. Post-trial motions for judgment n. o. v. and a new trial were also denied.

Defendant contends that "the plaintiff completely failed to prove that the defendant did not exercise reasonable care and caution in the maintenance of its store and completely failed to prove defendant guilty of negligence." It maintains that at best the evidence shows that plaintiff was an invitee; that employees of defendant filled bags with merchandise purchased by customers at the front end of the checkout counter in the area in which customers entered and left the store; that boxes in which produce and groceries were received at the store were stored in this front area for the convenience of checkers employed by the store and customers wishing to use them; and the floor in the area where the incident occurred had been swept half an hour to an hour and a half before the incident. Among the authorities cited are Schmelzel v. Kroger Grocery & Baking Co., 342 Ill App 501, 96 NE2d 885 (1951), and Wroblewski v. Hillman's, Inc., 43 Ill App2d 246, 193 NE 2d 470 (1963).

In Schmelzel v. Kroger Grocery & Baking Co., the plaintiff claimed she slipped and fell as a result of a piece of lettuce being in one of the aisles. There was testimony that the floors had been swept two or three times during the day, and that the store was well lighted with groups of lights from the front to the back, and that there was no difficulty in seeing. A motion for a directed verdict at the conclusion of plaintiff's case was allowed. In affirming, the Appellate Court said (p 506) :

> "It is the duty of persons who invite others upon their premises to keep such premises in a reasonably safe condition so that their invitees will not

215

be injured by reason of any unsafe condition of the premises, yet the law does not make the owners of premises insurers of persons thereon. . . . Reasonable care to see that premises are reasonably safe is all that is required.

"It is necessary to allege and prove the defendant knew of such unsafe condition, or that same existed for a period of time from which it might be inferred that had he been exercising ordinary care he could have learned of same. . . .

"The presence of this small portion of a leaf lying on a clean and open floor of a well-lighted grocery store, considered in connection with the other evidence in this case, did not create a liability for which these defendants could be called upon to respond in damages. The rules of law announced in Jones v. Kroger Grocery & Baking Co., supra, are applicable to this case and we adhere to them as being conclusive and controlling in this case."

In Wroblewski v. Hillman's, Inc., the plaintiff stepped on a vegetable leaf on the floor of defendant's self-service grocery store outside the checkout counter and turnstile. There the Appellate Court affirmed a directed verdict for defendant at the close of plaintiff's evidence and said (p 248):

"Defendant's motion for a directed verdict was predicated upon plaintiff's failure to show either that the vegetable leaf in question was dropped by one of defendant's servants or that it had been in place for a sufficient length of time to charge defendant with constructive notice of its presence on the floor. It is our opinion that defendant's motion correctly stated the applicable Illinois law. Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 474,

173 NE2d 443 (1961) a leading case, states the rule as follows:

> " 'Where a business invitee is injured by slipping on a foreign substance on the premises, liability may be imposed if the substance was placed there by the negligence of the proprietor or his servants, or, if the substance was on the premises through acts of third persons or there is no showing how it got there, liability may be imposed if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. . . .'

"With reference to determining what circumstantial evidence is sufficient to sustain a reasonable inference that the foreign matter was present on defendant's premises through the act of defendant or his servants, the court said (p 475):

> " '[E]ven where there is proof that the foreign substance was related to defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury, defendant is entitled to a directed verdict, such evidence being insufficient to support the necessary inference. . . .' "

Defendant argues that the evidence "overwhelmingly demonstrated that the defendant was using ordinary care for the safety of the plaintiff, and kept the property reasonably safe for use by the plaintiff and that on the facts disclosed it was clearly evident that the plaintiff herself had not exercised any degree of ordinary care that would have avoided the accident." It notes that at the conclusion of all the evidence, the court

erroneously relied on Donoho v. O'Connell's, Inc., 13 Ill 2d 113, 148 NE2d 434 (1958), in refusing to direct a verdict for defendant. In Donoho, a customer was injured when she slipped on a piece of grilled onion on the floor of defendant's restaurant. There was evidence that some fifteen minutes prior to the occurrence a bus boy had cleared a stand-up table, and he had a practice of wiping debris off the counter with a damp cloth so that particles could drop to the floor. The court sustained a lower court judgment for the plaintiff. Defendant notes that in Donoho the last person to be in the area where the accident complained of occurred was an employee of the restaurant whose duties were to clean off the tables.

Defendant asserts that the testimony of Sharon Vrbousky was clear that she had swept the floor just prior to going to lunch, and that the fall occurred at approximately 1:30 p. m. while she was at lunch, and that plaintiff had been taken from the store before she returned to work. Defendant argues that it was not an insurer against accidents occurring on the realty, and that no presumption of negligence could be attributed to it merely by showing that injury has been sustained by one rightfully on the premises. See Beccue v. Rockford Park Dist., 94 Ill App2d 179, 236 NE2d 105 (1968).

Defendant finally argues that the court's refusal to direct a verdict for defendant or enter judgment notwithstanding violated the test set down in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967):

> "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Defendant maintains that under Illinois law it is no longer sufficient that a party have some evidence which, on an ex parte basis would support his contention, and "a plaintiff cannot establish an attenuated case structure which might suffice if it were uncontested, but is actually shattered by evidence offered to oppose it, and still successfully claims the right to have a jury determine the issues."

Plaintiff contends that the presence of the lettuce leaf on the floor can only be attributable to the negligence of defendant's employees. Lettuce boxes were used by checkers to parcel groceries for customers, and if the lettuce leaf came from those boxes, its presence was attributable to defendant's negligence. Also, because defendant's employees were instructed to clean out the patrons' carts when they came to the checkout point, if the lettuce leaf came from the basket of a cart it was attributable to a checker's negligence. Finally, because the heads of lettuce are individually packaged by Jewel employees and because the customer is not in contact with the bag of groceries until the bags are in the cart, the blame must lie with an employee.

Plaintiff also asserts that even if the lettuce leaf was not attributable to defendant's employees, the evidence shows sufficient notice to defendant of the presence of the leaf. She points out that the lettuce leaf was not dropped by plaintiff; that it was lying approximately three feet from one of defendant's employees and that according to the testimony the floor had either not been swept at all, swept not more than five minutes before the incident, or had not been swept for an hour and forty-five minutes to an hour and fifteen minutes before the incident. In addition, if no sweeping occurred the defendant is liable for failing to follow its own precautions of sweeping up to fifteen times a day. On the other hand, if the sweeping occurred five minutes before the

accident, it is reasonable to infer that the sweeper either failed to see the lettuce leaf or failed to sweep it up. Cited as authorities are Saviola v. Sears, Roebuck & Co., 88 Ill App2d 13, 232 NE2d 4 (1967); Safeway Stores, Inc. v. Preston, 269 F2d 781; and Gee v. Salcido, 2 Ariz App 280, 408 P2d 42, 45.

We think Donoho v. O'Connell's, Inc., is in point here. There it is said (p 118):

> "[L]iability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if it was placed there by the negligence of the proprietor or his servants, or, if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. . . . Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive . . . ; whereas, if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material fact. . . ."

And at page 125:

> "[T]he query is not whether it was also possible that a customer could have dropped the onion ring, but whether the evidence makes it more probable that defendant or his servants dropped it."

■■ We find the evidence in the instant case was sufficient for the jury to reasonably infer that defendant's employees were the only possible source of

the dropped lettuce leaf and that the question of actual or constructive notice was not material here. The lettuce was related to defendant's business, and the negligence was circumstantially proved by the testimony that the first time a customer actually came in contact with the parcel of groceries was when the Jewel employees had finished ringing up the bill and had finished packing it into bags, and then the customer was given the bags to take home or given his grocery cart to wheel out to his car. There is testimony that empty produce boxes, including "lettuce boxes," were brought to the front of the store for use by the cashiers in packaging, and if the area had been swept just before the occurrence, we think it reasonable to infer that the sweeping had been negligently performed.

■ ■ Although a supermarket is not an insurer for all injuries suffered on its premises, and "reasonable care to see that premises are reasonably safe is all that is required" (Schmelzel v. Kroger Grocery & Baking Co., p 506), we conclude that the negligence issue was properly submitted to the jury by the trial court. The presence of the lettuce leaf on the floor, under the circumstances portrayed here, "makes it more probable" that defendant or its employees dropped it. Donoho v. O'Connell's, Inc., p 125.

As no contentions are raised by defendant on any other issue, for the reasons given the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.