RUBY PIPER, Plaintiff-Appellee, *v.* MORAN'S ENTERPRISES, d/b/a Moran's Market, Defendant-Appellant.

Fifth District   No. 5—83—0298

Opinion filed February 10, 1984.

Stephen W. Thomson, of Reed, Armstrong, Gorman & Coffey, P.C., of Edwardsville, for appellant.

Stephen C. Buser, of Frierdich and Buser, of Columbia, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, Moran's Enterprises d/b/a Moran's Market, appeals from the judgment of the circuit court of St. Clair County entered upon the jury's verdict in favor of the plaintiff-appellee Ruby L. Piper. Moran's Enterprises (Moran's) appeals from the denial of its post-trial motion for judgment notwithstanding the verdict or a new trial. The jury awarded Piper $31,000 in damages for personal injuries suffered in a fall from a wooden pallet in the appellant's store.

Piper went to Moran's store on December 23, 1978, to buy a case of root beer. She shopped in Moran's because it was convenient and it sold certain items, including soda, more cheaply than other markets. Dottie Darnell, a clerk in Moran's, recognized Piper and saw her go to the aisle where cases of soda were stacked on wooden pallets placed along the walls. Darnell could see Piper's head and shoulders above stacks of merchandise. Piper, 61 years old at the time of the accident, was wearing her glasses and low-heeled shoes.

As Piper moved her grocery cart along the aisle, she stopped to talk with another shopper and then turned back to get the root beer from one of the wooden pallets. A pallet is a wooden platform 40 inches by 48 inches. Its top surface is formed of wooden slats separated by random spaces, variously estimated to be one quarter, $2\frac{1}{2}$ or three inches wide. The pallets, stacked with 100 cartons of soda, were delivered to Moran's from the dealer's warehouse. Moran's employees used pallet jacks to bring the filled pallets into the store and place them along the wall as well as to remove empty ones. Properly inserted, the jacks went under the slatted top surface so that the boards ran across the jacks and were parallel to the wall when the pallets were in place. Piper described the boards in the pallet from which she fell as running out from the wall rather than parallel to it. Darnell, who said she had pulled cases of soda to the front of the same pallet, thought the slats "would have been running crosswise *** ."

The market used the pallet system to lower labor costs, but it required its employees, including managers, to move cases forward on the pallets so customers could reach merchandise without getting on the pallets. As damaged pallets were found in the store, they were stacked behind the building to be returned to the warehouse. No signs were posted to advise patrons about stepping on pallets, but employees were expected to move cartons for customers who asked for assistance. Darnell said she had never seen an adult step on a pallet to

get anything. Piper said she had stepped on pallets before. On the Saturday when Piper fell, an extra stock boy had been hired to re-stock and help customers. Piper did not see him.

Darnell testified that sometime before 10 a.m. on December 23 she moved all 35 cases of soda to the front of the pallet. She estimated that 200 customers had come through the store that morning, and she had been busy at the check-out counter from 10 a.m. on. When Piper came to the pallet, she found partly filled cases on the right front of the pallet, but she wanted root beer which was further back. Under vigorous cross-examination she said that she saw no defect in the pallet before she stepped on it and that she may have stepped two feet into the middle of it. She took up a case of soda and made a quarter turn to the left. Her foot was caught and she fell, breaking her ankle and suffering other injuries. After she fell, she saw a hole on the left front corner of the pallet. She did not hear any cracking sounds or see any ragged edges, but thought there was a short board on the top of the pallet where the hole was.

Darnell, hearing Piper call out and seeing her disappear behind stacked merchandise, came up to where Piper lay on the floor. Piper remembered mentioning the hole to Darnell, but Darnell denies hearing any comment about the pallet. Nothing was said to the manager about the pallet. In a deposition read to the jury, the doctor who examined Piper at the hospital repeated her account of falling because she tried to free her foot from a hole in the pallet. Piper's daughter thought her mother said her foot went "in a hole" or "between the boards." A friend vaguely remembered a comment about a heel catching in a slat.

After the fall, Piper was taken to the hospital where the broken bones were realigned and a cast applied. A second cast was applied in January 1979. After the second was removed and Piper began to walk again, she complained of back pain. She was treated for back problems over a period of years. Doctors testified that her ankle was permanently weakened and that her back condition had probably been aggravated by the fall. It was predicted that she would continue to experience back pain.

Piper filed her first complaint on June 4, 1979, alleging that her injuries were the result of the store's negligence in bringing in a wooden pallet "containing a hole or wide spaces on the top." After a series of motions to dismiss and amended complaints, Piper's fourth amended complaint was filed on March 29, 1982, naming Moran's Enterprises, Inc., d/b/a Moran's Market, as the sole defendant. Piper alleged that by maintaining a wooden pallet with an open space in the

top caused by a missing piece of the pallet, Moran's failed to exercise due care for Piper who was an invitee. She further alleged in subparagraphs 4b through 4c that Moran's had failed to move the soda cases forward on the pallet, to appreciate the danger in requiring customers to step onto the pallets, to warn of the dangers and to conduct routine inspections of the pallets. Moran's moved to dismiss the fourth amended complaint or to strike subparagraphs 4b through 4c. After the motion was denied, Moran's denied all of Piper's allegations and filed an affirmative defense of Piper's contributory negligence. The case went to the jury on the theory of comparative negligence.

As the case was tried before the jury, the major points of contention were whether the hole was something other than a wide space between the boards and whether a hole big enough for Piper's foot to go in would also be obvious enough so that she could have avoided it by exercising due care. Defense witnesses denied seeing any hole at any time. Piper described a hole several inches square with no ragged edges but big enough to hold her whole foot. Piper marked on photographs of typical pallets the point where she thought the hole was. She demonstrated to the jury how she stepped onto the pallet and turned to get off. The defense argued that in stepping two feet into the pallet and making a quarter turn, Piper could not have stepped on the front left of the pallet where the hole was said to be.

During the instruction conference, each party objected to the other's statement of the law defining the duty owed a business invitee by a property owner. Appellant objected to plaintiff's instruction No. 16, based on Illinois Pattern Jury Instructions (IPI), Civil, No. A20.01 (1981 Supp.), which stated that Moran's could be found liable if the jury found it was negligent in "failing to exercise due care and caution for the plaintiff's safety" in maintaining a pallet with an open space on top, failing to move cases forward, or failing to inspect for defects. The court refused to give appellant's instructions Nos. 1 and 6, which stated that the plaintiff, as a business invitee, had the responsibility for her own safety and was held to be as aware of "obvious and normal hazards" on the premises as the landowner. Although not objected to by plaintiff, defendant's instruction No. 2 was withdrawn by the court after plaintiff's closing argument. It stated that if the condition alleged to be the cause of plaintiff's injury was not latent or concealed, appellant could expect her to discover and appreciate the risk of the condition. Appellant's definitions of the duties of landowner and invitee were based on its interpretation of *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709, rather than pattern instructions. After approximately two hours of

deliberation, the jury returned its verdict in favor of Piper and awarded her damages of $31,000. Judgment was entered on the verdict on December 16, 1982.

In a post-trial motion filed on January 11, 1983, Moran's Market sought a judgment in its favor notwithstanding the verdict because plaintiff's complaint stated no cause of action, that as a matter of law plaintiff had failed to show defendant had time for notice of the defect, had breached a duty or proximately caused plaintiff's injury. In the alternative, appellant contended that it was entitled to a new trial because the verdict was against the manifest weight of the evidence. It also alleged error in the submission of instructions and prejudice because of comments made to jurors by plaintiff's counsel. The court denied the post-trial motion on March 30, 1983. Notice of appeal was filed on April 28, 1983.

Appellant states four issues: (1) whether defendant was free of negligence as a matter of law, (2) whether the fourth amended complaint was insufficient as a matter of law, (3) whether the jury was properly instructed, and (4) whether the verdict was against the manifest weight of the evidence.

■ With regard to the last of these issues, we would point out that the appellant had a positive duty to support each point made in its appeal with contentions, citation of authorities, and references to pages of the record. If a point is not argued, it is waived and may not be raised in a reply brief, oral argument or petition for rehearing. (87 Ill. 2d R. 341(e)(7).) As it did in the post-trial motion for a new trial, appellant asserts that the verdict is against the manifest weight of the evidence and it is therefore entitled to a new trial, but it offers as argument and authority only a direction to the court to reread what has been said in the preceding 13 pages with regard to another issue. In its brief the single citation to "I.L.P., New Trials §26, p. 28" fails to enlighten us as to its contentions concerning the weight of the evidence. We do not think such a presentation to this court satisfies the rule that appellant marshal and present contentions, authorities, and page references appropriate to the issue. We decline to take up the burden of research and argument and consider the issue waived. *Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 441 N.E.2d 360; *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520.

Appellant's arguments on the remaining three issues rest almost entirely on its contention that this case must be determined in light of the results of *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, and *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709. In those cases experienced workmen climbed

structures to carry out their work and were injured in the process. In *Genaust* the plaintiff had contracted to build a citizen's band antenna for the defendant. Electricity from an adjoining property arced to the metal antenna, seriously injuring the plaintiff. The supreme court affirmed the dismissal of plaintiff's complaint for failure to state a cause of action because the defendant could not be negligent in failing to discover a danger on another's property and not under his control. When the plaintiff represented himself as competent to build the antenna in the spot near the clearly visible wires, the defendant properly expected plaintiff to recognize and take into account the commonly known dangers of power lines. In *Longnecker* an experienced lineman, with a duty to inspect the poles he climbed and discretion to refuse to climb if he found a pole unsafe, fell after climbing a rotten pole and unfastening his safety belt. We reversed the trial court's judgment for the plaintiff because the condition of the pole was obvious and known to the plaintiff. Both cases are based on the proposition that a possessor of land has a duty of reasonable care to a business invitee which does not extend to obvious dangers the invitee would be expected to discover and avoid by his own efforts. This same view was stated in *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 423 N.E.2d 942, where the landowner was under no duty to protect an experienced truck driver against the obvious and apparent dangers of standing between two trucks on an inclined ramp.

All of these cases state that section 343 of the Restatement (Second) of Torts (1965) is the settled law in Illinois on the liability of a possessor of land to invitees:

"Sec. 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." (Restatement (Second) of Torts sec. 343 (1965).)

Section 343 should be read in conjunction with section 343A:

"Sec. 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical

harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Restatement (Second) of Torts sec. 343A (1965).)
From the Restatement and the cases cited above, the appellant abstracted the requirement that the plaintiff could prevail only by pleading and proving a latent defect in the pallet which the appellant failed to correct despite actual or constructive knowledge of it. Adoption of such a view would relieve the landowner of any liability except for latent defects.

██ The Restatement, however, speaks not of latent conditions but those which are actually known or discoverable "by the [owner's] exercise of reasonable care." In none of the cases cited was it decided that proof of a latent defect was necessary to establish the landowner's liability. In *Longnecker* the court observed that liability could be based on proof of "a latent or concealed [condition] *or* [one] existing under circumstances in which it would not be expected to be discovered by the invitee." (Emphasis added.) (*Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 639-40, 381 N.E.2d 709, 714.) In *Genaust* the complaint failed to state a cause of action in negligence because the landowner could expect the invitee to be aware of power lines which were neither hidden nor concealed. The landowner's duty was "to discover dangerous conditions on his land" which he could not expect the invitee to discover. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472.) These cases as well as *Sepesy* turned on the plaintiff's special competence to see a danger, not on the issue of latency. For this reason, we do not find that Piper's fourth amended complaint failed to state a cause of action for failing to plead a latent defect in the pallet. Plaintiff alleged that Moran's Market failed to exercise due care for her safety in maintaining a defective pallet, in failing to move soda forward on the pallet to make it unnecessary for patrons to step up to get cartons, and failing to conduct routine inspections for defects. It appears to us that the complaint alleges appellant's failure to carry out its duty to use reasonable care to protect its customers against a condition discoverable by its reasonable efforts which customers trying to get soda would not "discover or realize the danger [of], or [would] fail to protect themselves against." Restatement (Second) of Torts sec. 343 (1965.)

All defense witnesses denied seeing any hold. Nevertheless, appellant appears eager to concede an open and obvious defect in order to shift liability to Piper. It has not been shown that the pallet was so

obviously defective prior to Piper's fall that she stands in a position equivalent to that of the plaintiffs in *Genaust, Longnecker* and *Sepesy*. We do not think those cases dictate the result here. On the contrary, this case must be viewed in light of *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434, and similar slip-and-fall cases. In these cases, the landowner owes an invitee a duty of exercising ordinary care in maintaining the premises in a reasonably safe condition. Liability is imposed if a foreign substance which causes a patron to fall is placed on the premises through the negligence of the owner or his employees. When the plaintiff cannot show how the substance came to be on the premises, he must show that the owner or his servants knew of it or that it was on the premises for a sufficient period to establish constructive notice to the owner of a dangerous condition. If the plaintiff can show that the substance is related to the owner's business and offer some slight additional evidence, either direct or circumstantial, "from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance *** courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice." *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 122, 148 N.E.2d 434, 439.

In *Donoho* a 56-year-old woman slipped on an onion ring in a restaurant 15 minutes after a busboy had wiped off the tables in the area where the woman fell. The woman was the only one to testify about the onion ring. The owner and his employees denied seeing any food or moisture on the floor. Testimony showed that the busboy's cleaning methods could have allowed food to drop to the floor. From such circumstantial evidence the jury could have "reasonably inferred that it was more likely that the onion ring was on the floor through the act of defendant's servant, than by the acts of any customer." (*Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 125, 148 N.E.2d 434, 441; *Wolfe v. Bertrand Bowling Lanes, Inc.* (1976), 39 Ill. App. 3d 919, 351 N.E.2d 313; *Mraz v. Jewel Tea Co.* (1970), 121 Ill. App. 2d 209, 257 N.E.2d 548.) In *Mraz* a customer fell on a lettuce leaf in the checkout lane of a grocery store. Testimony that it was customary for produce boxes to be brought up to the checkout counters for packaging groceries made it more probable that employees rather than customers had caused the lettuce leaf to be on the floor. Even though store employees testified that the checkout lane had been swept just before the accident, the court believed it could be reasonably inferred that the sweeping had been done negligently.

In the present case, there is no question but that the pallet was

an integral part of Moran's marketing scheme and that it was placed in the store by the appellant's own employees. The store developed precautionary policies of supervision and management which took into account problems arising from the use of pallets. All employees, including the manager, were expected to use their spare time to keep products on the front of the pallets. Cashiers could ring a bell to summon help for customers who requested it, and extra help was hired for busy Saturdays. Damaged pallets were to be removed from the store. However, on the busy Saturday Piper fell, she saw no one to help her to get root beer from two feet back on a pallet which had last been restacked hours before the accident. No evidence was offered to show that any employee gave any attention to the pallet after Darnell worked on it.

From this circumstantial evidence and the fact of the pallet's relation to Moran's business, it might reasonably be inferred that the condition of the pallet was more probably due to the negligence of employees rather than unidentified third parties. It was not necessary for Piper to establish Moran's actual or constructive notice of a defect. The issue of Moran's negligence properly went to the jury whose duty it was to judge the credibility of witnesses and weigh conflicting evidence. (*Blake v. Dickinson* (1975), 31 Ill. App. 3d 379, 332 N.E.2d 575.) In finding for the plaintiff, the jury must have found that appellant breached a duty of reasonable care to Piper and that her injuries were proximately caused by that breach.

■■■ Moran's asks us to decide whether, as a matter of law, Piper's evidence established its negligence. The standard for determining negligence as a matter of law is the same as for determining whether Moran's has the right to a judgment notwithstanding the verdict. (*Papadatos v. National Tea Co.* (1974), 21 Ill. App. 3d 616, 316 N.E.2d 83; *Burns v. West Chemical Products, Inc.* (1973), 12 Ill. App. 3d 947, 299 N.E.2d 455.) The standard was established in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14:

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Applying the *Pedrick* test, we cannot say that when all the evidence is viewed most favorably to Piper that it so overwhelmingly favors Moran's that no verdict against it could ever stand.

■■ Finally, appellant contends that the trial court erred in submitting plaintiff's instruction No. 16 on negligence, which was framed

in accord with IPI Civil No. A20.01 (1981 Supp.). Instruction No. 16 stated in part:

> "The plaintiff claims that she was injured and sustained damage, and that the defendant was negligent in failing to exercise due care and caution for the plaintiff's safety in the following respects:
>
> It maintained a wooden pallet on which soda cases were set upon that had an open space on the top side resulting from a missing piece of the pallet;
>
> It failed to move forward soda cases set upon wooden pallets to enable customers, including the plaintiff, to obtain soda from the aisle without having to step on said pallets;
>
> It failed to conduct inspections for defects to wooden pallets upon which grocery products were set.
>
> The plaintiff further claims that one or more of the foregoing was a proximate cause of her injuries.
>
> * * *"

The trial court had a duty to submit an Illinois Pattern Jury Instruction applicable to a civil case "unless the court determine[d] that it [did] not accurately state the law." (87 Ill. 2d R. 239(a).) We believe IPI Civil No. A20.01 (1981 Supp.) expresses the standard of care due to a business invitee articulated in *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434, and find that the trial court correctly submitted the plaintiff's instruction No. 16. In refusing defendant's instructions Nos. 1, 2, 5 and 6, the court determined that they were nonpattern instructions which incorrectly stated the law applicable to the facts of the case. All of these instructions were based on *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709, which we consider inapplicable to the facts of this case.

◼ Appellant argues that it was prejudiced in its closing argument by the court's withdrawal on its own motion of defendant's instruction No. 2 after the instruction conference concluded without any objection by the plaintiff. It is not error to withdraw an erroneous instruction even after it has been read to the jury, providing the jury is informed of the withdrawal. (*Osmon v. Bellon Construction Co.* (1964), 53 Ill. App. 2d 67, 202 N.E.2d 341.) Defendant's instruction No. 2 stated that:

> "If the condition which plaintiff alleges caused her injury was not a latent or concealed one, it was one which defendant could expect her to discover and appreciate the degree of risk arising therefrom. Whether the condition was a latent or concealed one is for you to decide."

As we have previously explained, the existence of a latent or concealed defect is not the correct test for negligence in a slip-and-fall case. The trial court correctly withdrew the instruction before it was read to the jury. The withdrawal came after the instruction conference in which defense counsel had been informed that the court did not consider instructions based on *Longnecker* to be correct expressions of the law. We can see no prejudice to appellant's defense.

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

WELCH, P.J., and KASSERMAN, J., concur.