WILLIAM F. RUTZEN, Plaintiff-Appellee, v. KEN PERTILE, Indiv. and d/b/a The Waltonian, Defendant-Appellant.

Second District   No. 2—87—1106

Opinion filed August 3, 1988.

Ford, Marsch, Rampson & Wilhelm, P.C., of Wheaton (John H. Wilhelm, of counsel), for appellant.

John J. Henely, Ltd., of Chicago (John J. Henely, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, a judgment in the amount of $93,400 was entered in favor of the plaintiff, William F. Rutzen, and against the defendant, Ken Pertile. Defendant appeals.

A brief statement of the facts will suffice. Plaintiff was a passenger on a boat owned and operated by Melvin Jury. On the date of the accident, Jury, plaintiff, and Edward Henninger were on the boat and pulled up to the Waltonian Supper Club, which was owned and operated by the defendant. The pier at the supper club was "T" shaped. As Jury was docking the boat, plaintiff was to step off the boat onto the pier and tie a running line around the nearest vertical post. As plaintiff moved from the boat onto the pier, his foot went through a board on the pier. Henninger helped plaintiff up. Plaintiff's leg was bleeding, and there was a large knot on his knee. Henninger grabbed the board that had broken, and it crumpled in his hand. Plaintiff was taken up to the supper club and from there transported to the McHenry Medical Center. Thereafter, plaintiff filed a complaint against the defendant individually and doing business as the

Waltonian Supper Club.

During the pendency of the lawsuit, the defendant and his wife relocated to Florida, where defendant operates a used car agency. On April 27, 1985, the plaintiff, pursuant to Supreme Court Rule 237 (107 Ill. 2d R. 237), served a notice to produce defendant at trial on defendant's attorney. The defendant, in turn, served on plaintiff a notice to take defendant's evidence deposition. Although, initially, the parties agreed to conduct the evidence deposition in Florida, the parties apparently could not reach an agreement as to the taking of the deposition.

On May 21, 1985, there was a hearing on plaintiff's motion to quash the evidence deposition of defendant, then scheduled for May 22, 1985. The motion also requested that defendant be ordered to appear at the trial, which was then set for August 3, 1985. The trial court ordered that defendant be present for the trial, stating as follows:

> "So there is no misunderstanding, I don't expect Mr. Pertile to be here for any of the process on Monday [August 3, 1985], but I would expect under the ruling that he be here ready to proceed on Tuesday at 9:00 o'clock."

On July 13, 1985, plaintiff presented a motion to continue the trial date of August 3, 1987. On July 20, 1985, an order was entered setting the case for trial on August 24, 1985.

On August 6, 1985, the evidence depositions of the defendant and his wife, Shirley, were taken in West Chicago, Illinois, by defendant's attorney. Plaintiff's attorney, who received the notice of the evidence deposition on August 3, 1985, was not present for the depositions. In a conversation with defendant's attorney, plaintiff's attorney reminded defendant's attorney that plaintiff's attorney would be out of town on August 6, 1985, and was requesting that the evidence deposition not proceed on that date, and that he believed that proceeding with the evidence deposition was contrary to the court order which required defendant to be present for trial.

On August 24, 1985, the case was called for jury trial. Plaintiff filed a motion to quash the evidence depositions of the defendant and his wife. Following a hearing, the evidence depositions were quashed, and the defendant ordered to appear at trial. A jury was impaneled and opening statements were made. The case was then recessed until August 25, 1985, at 11 a.m.

On August 25, 1985, prior to the calling of the first witness, defendant made a motion to reconsider the order quashing the evidence deposition of the defendant and his wife. After argument, the

motion was denied. Defendant's attorney then moved for a brief continuance to enable defendant to travel from Florida to Waukegan for the trial. The trial court denied the motion, stating as follows:

"The case was removed from the August 4th trial date and set for August 24. So certainly there was ample notice of the change of date. The problem is of course also we have other cases set for trial and I have a bench trial next week and then I'll be on vacation for two weeks, and the problem is also the jurors have all been qualified to serve this week. There was indication from counsel that the case could be tried in three days and the jurors have not been qualified or we don't know if they would even be available for a later time.

The Court will deny the motion to continue."

During the trial, plaintiff called four witnesses. These witnesses variously testified as to the condition of the pier, the distance between the boat and the pier, the injuries sustained by the plaintiff, and the consequences of the injury to the plaintiff.

The defendant called two witnesses who testified that the pier was in good shape; that there were regular inspections of the pier; and as to the distance the plaintiff traveled crossing to the pier.

Defendant's attorney advised the court that he had no more witnesses available but reminded the court defendants were flying in from Florida and were due in at 1:30 p.m. that afternoon and requested a short continuance pending defendant's arrival. Plaintiff's attorney objected, stating that the defendant ought to be required to be put on evidence after lunch or else close so the case could go to the jury. The court then observed that the weather conditions were unusual due to the rain. Noting that the defendant's remaining testimony plus closing argument would probably require three hours, and that defendant was now due in at 2:30 p.m., the trial court agreed to hold the case until 3:30 p.m. The court recessed until 1:30 p.m.

Between 1:30 p.m. and 2:30 p.m., the trial court and the parties held a conference on jury instructions.

At 3:30 p.m., the trial court asked defendant's attorney to call his next witness. Defense counsel responded that he had received a telephone call from the defendant at 3:20 p.m. advising that his plane had just landed at O'Hare field, Chicago, and that it would take approximately one hour to reach the courthouse to testify and requested that the case be continued pending their arrival. Plaintiff's attorney objected, and the trial court denied the motion. Defense counsel then moved again to read the depositions of defendant and his wife into the record, which motion was denied. Defendant's attor-

ney then moved for a directed verdict, which was denied. The trial court also denied defendant's motion for a mistrial based upon the trial court's denial of a continuance to defendant, or in the alternative, the trial court's refusal to allow the defendant's attorney to read the defendant's and his wife's evidence depositions into the record.

The attorneys for both parties then presented closing arguments to the jury. Following closing argument, court was adjourned until 9 a.m., August 27, 1985.

On August 27, 1987, defendant's attorney moved to reopen the case to permit the defendant and his wife to testify, and the trial court allowed defendant to make an offer of proof. Defendant's attorney stated for the record that the court commenced instructing the jury at approximately 4:55 p.m. on August 26, 1987, and concluded at approximately 5:17 p.m. on that same date. Shirley Pertile, defendant's wife, appeared in the courtroom while the first jury instruction was being read to the jury. Defendant appeared in the courtroom at approximately 5:02 p.m. Closing argument had commenced at approximately 4 p.m. After the jury had left the courtroom, defendant's attorney asked to make a record at that time, but there was no court reporter present.

In response, plaintiff's attorney stated that the first day of trial, August 24, 1987, defendant's attorney told him that the defendant would not be coming, and that on August 25, 1987, the trial court was again informed that the defendant was not going to appear for the trial. On August 26, 1987, the trial court was told that defendant and his wife were coming and that they would be at the airport in Chicago at 2:30 p.m. The defendant's attorney asked for a continuance of the trial which was granted until 3:30 p.m. At approximately 3:30 p.m., defendant's attorney informed the court that defendant and his wife were at the airport and that it would take an hour or two for them to arrive at the courtroom. However, the trial court determined that it had waited long enough. Defendant's attorney objected to the plaintiff's attorney's characterizations, stating that they were not true. The trial court stated that it was not sure the characterizations were true, and that the ultimate conclusion might be that the witnesses were not going to come, but it believed that defendant's attorney had tried to obtain their appearance at the trial.

The defendant then made an offer of proof. Defendant testified that he has been a resident of Florida for the past seven months. He is the sole proprietor of a used car agency in St. Petersburg, Florida. He received a telephone call asking him to appear at the trial. In or-

der to come to Illinois, he had to cancel several appointments, several of which involved leasing companies; arrange for someone to watch his office; and cancel plans to celebrate his wedding anniversary, which was August 27, 1987. Because he was scheduled to be initiated into the Elks on August 25, 1987, his wife made reservations to fly out August 26, 1987, at 1:10 p.m. eastern standard time, which was the earliest flight available at that time. The flight was delayed and did not reach O'Hare field, Chicago, until 3:20 p.m. at which time he called his attorney. As instructed, defendant came immediately to the courthouse; however, the weather conditions and traffic were extremely miserable due to the rain.

As regards the accident to plaintiff, defendant witnessed the accident and the injury to plaintiff. Defendant had inspected the pier prior to the accident. As he had been ordered to appear for the trial in this case, he was in Illinois on August 4, 1985. On August 6, 1985, he gave a deposition. If he were called as a witness today, his testimony would be substantially the same as it was at the deposition.

On cross-examination, defendant testified that it was late on August 24, 1985, when he was first advised he needed to be present for the trial commencing August 24, 1985.

Shirley Pertile, wife of the defendant, testified that she is a resident of Florida. She was present at the Waltonian Supper Club at the time of plaintiff's injury but didn't see him jump off the boat. She did see plaintiff hobbling up the pier and in the supper club.

On August 3 or 4, 1985, she was present in Illinois for trial in this case. On August 6, 1985, she gave an evidence deposition, and her testimony as a witness today would be substantially the same as that in the evidence deposition. Early in the afternoon of August 24, 1985, she received a call about the trial and made reservations to fly to Illinois.

On cross-examination, she testified that she didn't remember being told by the defense attorney that the trial was not going forward on August 4, 1987. The first time she was told the case was continued for trial to August 24, 1987, was around August 1 or 2. The first time she was told that the trial of the case was starting August 24, 1985, was the afternoon of that date. She did not receive a call the previous week alerting that this case was ready for trial on Monday, August 24, 1985.

Following arguments, the defendant's motion to reopen the proofs was denied. The jury returned a verdict in the sum of $93,400 in favor of plaintiff and against the defendant. Following the denial of his post-trial motion, defendant filed this appeal.

Defendant contends that the trial court abused its discretion in denying a continuance to enable the defendant and his wife to testify. Defendant points out that the trial court was aware that defendant and his wife were on their way to the courthouse and, in fact, arrived in the courthouse just as the trial court began instructing the jury. On the other hand, plaintiff argues that defendant's lack of diligence negates any excuses for the defendant not being present. Plaintiff maintains that defendant's attorney had a reasonable expectation that the defendant would have to be produced at trial, yet the defendant was not apparently told the trial had commenced until after the first day of proceedings.

Supreme Court Rule 231(f) provides as follows:

"No motion for continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." 107 Ill. 2d R. 231(f).

██ █ It is well settled that litigants do not have an absolute right to a continuance; rather, the decision to grant or deny a motion for continuance is within the sound discretion of the trial court. (*Wine v. Bauerfreund* (1987), 155 Ill. App. 3d 19, 22.) A party seeking a continuance must provide the court with particularly grave reasons for a continuance once the case has reached the trial stage because of the potential inconvenience to the witnesses, the parties, and the court. (*In re Marriage of Earhart* (1986), 149 Ill. App. 3d 469, 474.) We note that defendant failed to file an affidavit in support of his request for a continuance as required by Supreme Court Rule 231. Failure to file such an affidavit, standing alone, warrants the exercise of the court's discretion in denying the requested continuance. *Wine*, 155 Ill. App. 3d at 24.

██ Nevertheless, we are of the opinion that given the peculiar circumstances of this case, it was an abuse of discretion for the trial court to deny a continuance to the defendant. As our supreme court has stated, "[t]he overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." (*Patrick v. Burgess-Norton Manufacturing Co.* (1976), 63 Ill. 2d 524, 527.) In actuality, the question before us is not whether a continuance should be granted but whether it should have been extended for, in fact, it was granted until 3:30 p.m. on August 26, 1985. At that time, the trial court was informed that the defendant and his wife were en route from the airport to testify and, in fact, arrived while court was still in session. Apparently their arrival at the courthouse after 3:30 p.m. was due to a delay of their

flight to Chicago and the inclement weather once they reached Chicago. Further, although the trial court expressed the opinion that defendant's attorney had made every effort to obtain his client's presence at the trial, the testimony of both defendant and his wife indicated they were unaware until the night of August 24, 1985, the first day of trial, that their presence was required in Illinois. While we appreciate that an orderly court proceeding must not be undermined by the personal schedule of witnesses, litigants, and their attorneys, it is exalting form over substance to refuse to hear testimony or refuse to give a short continuance where the witnesses are available and the proceedings have not yet concluded. Although we commend the trial court's efforts to maintain an orderly progression in the trial, this must never be at the expense of justice.

The cases relied on by plaintiff, *Wine v. Bauerfreund* (1987), 155 Ill. App. 3d 19, and *In re Marriage of Earhart* (1986), 149 Ill. App. 3d 469, are distinguishable from the case at bar. In *Wine*, defendant's attorney sought a continuance on the first day of trial because the defendant was unable to testify as he was away at school. The trial court, noting that the defendant was attending school in Iowa, noted that he could drive or fly back for the trial and denied the continuance. The defendant never appeared at the trial, although portions of his deposition were read in the record at trial. On appeal the denial of the continuance was affirmed. In *In re Marriage of Earhart*, the trial court would not permit the husband's witness to testify as an expert in regard to pensions and denied the husband a continuance. In affirming the trial court's denial of the continuance, the appellate court held that the husband had failed to "expressly" advise the court of the reason for the continuance or the period he would need to achieve his purpose, and that the denial was not an abuse of discretion.

By our decision in this matter, we are not condoning the conduct of the defendant's attorney or that of his clients. It is apparent here that the trial court gave every consideration that was due to the fact of defendant's out-of-State residency and potential disruption to his business by his absence. Moreover, in this era of increased litigation and given our mobile society and our telecommunication system, this situation should never have arisen in the first place. However, as noted above, it is the ends of justice that need to be served, and, in this case, justice requires that defendant and his wife be permitted to testify. Defendants also contend that the trial court erred in giving plaintiff's instruction No. 22. Since this issue may arise on the retrial of this case, we elect to address it within the scope of this opinion.

Plaintiff's instruction No. 22 is Illinois Pattern Jury Instructions, Civil, No. 20.01 (2d ed. 1971) ("Issues Made by the Pleadings"). The instruction requires that the pleader insert "those allegations of the complaint as to negligence which have not been withdrawn or ruled out by the court and are supported by the evidence." Plaintiff's instruction No. 22 stated in pertinent part as follows:

> "The plaintiff claims that he was injured and sustained damages, and that the defendant was negligent in one or more of the following respects:
>
> a. Allowed a defective or rotten wooden board to be placed on its pier so as to create a dangerous condition.
>
> b. Failed to warn patrons of the restaurant that said wooden pier was dangerous."

Defendant argues that it was error to submit the instruction because it did not inform the jury that it was plaintiff's burden of proof to establish that the defendant knew or should have known of the defective condition. (See *Genaust v. Illinöis Power Co.* (1976), 62 Ill. 2d 456.) Defendant further argues that the trial court should have given defendant's instruction No. 5, which provides in part:

> "The plaintiff claims that he was injured and sustained damages, and that the defendant was negligent in one or more of the following respects:
>
> a. knew or should have known that his pier had a defective or rotten board."

In response, plaintiff concurs that at the conference on instructions, the defendant objected to the plaintiff's instruction No. 22 on a different basis than is now being raised on appeal. Generally, an objection to jury instruction made at the conference on instruction can be raised on appeal. (*Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 596, 608.) When plaintiff's instruction No. 22 was heard at the conference on instruction, defendant's attorney stated as follows:

> "We object to that one. We believe the plaintiff should go to the jury solely on the first subparagraph, paragraph (a) and should not go to the jury on (b). We believe subparagraph (b) which is in the plaintiff's complaint should be stricken at this point because there is no evidence to show that the defendant knew of a defect and there is nothing that given [*sic*] rise to a duty to warn."

Later, after defendant's motion for a directed verdict and mistrial were denied, defendant's attorney stated as follows:

> "With regard to Instruction 22 of Plaintiff, we would ask the

court to reconsider the giving of their instruction and would further add the argument to the objection made before that in their instruction the jury is not told if the defendant knew or should have known if a defect existed. In Defendant's Exhibit [sic] 5 which is covering the same thing, that language is in there and we would retender our No 5."

The trial court denied the motion. It would appear, however, that the basis for defendant's objections that he now urges on appeal was considered by the trial court, and we shall decide this issue on the merits.

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468, a case relied on by defendant, the court stated as follows:

"The Restatement (Second) of Torts, section 343, correctly states the settled law regarding the liability of possessors of land to invitees. [Citations.] It provides:

'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.' "

An owner of business premises is not an insurer of the safety of patrons on his premises, but owes a duty toward them to exercise ordinary care in maintaining the premises in a reasonably safe condition. *Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 555.

*Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, relied on by the plaintiff, is a case similar to the one at bar. Piper was injured when she stood on a wooden pallet to reach a carton of soda in defendant's store. After a jury verdict in Piper's favor, the store appealed.

The store relied on *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, and *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634. In both cases experienced workmen climbed structures to carry out their work and were injured in the process. In *Genaust*, Genaust had contracted to build a citizen's band antenna for the defendant. Electricity from an adjoining property arced to the metal antenna, seriously injuring Genaust. The supreme court affirmed the dismissal of plaintiff's complaint for failure to state a cause of action because

the defendant could not be negligent in failing to discover a danger on another's property and not under his control. Based upon Genaust's representation of his competency to build the antenna near clearly visible wires, the defendant properly expected him to take into account the commonly known danger of power lines. In *Longnecker*, an experienced lineman with a duty to inspect the poles he climbed and the discretion to refuse to climb a pole he found to be unsafe, fell after climbing a rotten pole and unfastening his safety belt. The judgment for the lineman was reversed because the condition of the telephone wire was obvious and known to him. Both cases are based on the proposition that a possessor of land has a duty of reasonable care to a business invitee which does not extend to obvious danger the invitee would be expected to discover and avoid by his own efforts. *Piper*, 121 Ill. App. 3d at 649-50.

The court then went on to reject the store's argument that Piper was in a position equivalent to that of the plaintiff in *Genaust* and other similar cases. The court then stated:

> "We do not think those cases dictate the result here. On the contrary, this case must be viewed in light of *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434, and similar slip-and-fall cases. In these cases, the landowner owes *** a duty of exercising ordinary care in maintaining the premises in a reasonably safe condition. Liability is imposed if a foreign substance which causes a patron to fall is placed on the premises through the negligence of the owner or his employees. When the plaintiff cannot show how the substance came to be on the premises, he must show that the owner or his servants knew of it or that it was on the premises for a sufficient period to establish constructive notice to the owner of a dangerous condition. If the plaintiff can show that the substance is related to the owner's business and offer some slight additional evidence, either direct or circumstantial, 'from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance *** courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice.' *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 122, 148 N.E.2d 434, 439." *Piper*, 121 Ill. App. 3d at 652.

After reviewing the evidence, the court in *Piper* concluded that the evidence established that the pallet was related to the store's operation and that the condition of the pallet was more probably due to

the negligence of employees rather than unidentified third parties. The court has stated:

"It was not necessary for Piper to establish Moran's actual or constructive notice of a defect. The issue of Moran's negligence properly went to the jury whose duty it was to judge the credibility of witnesses and weigh conflicting evidence. [Citation.]" 121 Ill. App. 3d at 653.

In the case at bar, it can be inferred from the evidence that the pier where the plaintiff sustained his injuries was a part of defendant's operation of the supper club in that it supplied a place where boaters who wished to patronize the supper club had a place to tie up their boats. There also was evidence that defendant purchased the supper club the month proceeding the accident and had inspected the pier. Following that, the pier was inspected before each weekend and during the week. We conclude that there was sufficient evidence to infer that the condition of the pier was more probably due to the negligence of the defendant, and hence it was not necessary to instruct the jury as to defendant's actual or constructive knowledge. Therefore, it was not error for the trial court to give plaintiff's instruction No. 22, instead of defendant's instruction No. 5.

The remaining issues raised by the defendant need not be addressed by this court as they are either unsupported by relevant authority in relation to Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) or they can be addressed in the context of the new trial should they arise again.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

LINDBERG, P.J., and UNVERZAGT, J., concur.