Thomas T. Ryan, Plaintiff-Appellee, v. Kenneth Monson, Defendant-Appellant.

Gen. No. 49,122.

First District, Third Division.
March 12, 1964.
Rehearing denied April 2, 1964.

Hubbard, Hubbard, O'Brien & Hall, all of Chicago, for appellant.

Sidney S. Altman, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an order entered on December 19, 1962 denying a petition to vacate a judgment by default. An ex parte judgment was entered against the defendant on October 22, 1962 in the amount of $10,000.

The principal question involved here is whether the court abused its discretion when it denied the motion to vacate the default judgment, which was entered against the defendant, when defendant's attorney was engaged in the trial of another case in the Federal District Court.

The relevant facts, taken from the defendant's petition filed on October 30, 1962 to vacate an ex parte judgment entered on October 22, 1962, the supporting affidavits, the answer by plaintiff's attorney to the petition, the affidavits in reply to the answer and the report of preliminary proceedings on the 22nd day of October, 1962, are these:

This case had been tried twice previous to the ex parte hearing and judgment. The first trial resulted in a judgment for the defendant which was reversed on appeal to the Appellate Court. The second trial resulted in a disagreement by the jury.

This was a personal injury action. The plaintiff had been bumped by the automobile of the defendant after the plaintiff ran from behind the stairway of the elevated tracks at the intersection of Wilton Avenue and Addison Street; the defendant never saw the plaintiff before the plaintiff ran from behind the stairway. At the time of contact the defendant's automobile was almost stopped. Plaintiff fell to a sitting position over the center line in Addison Street. The accident occurred at 9:30 p.m. A westbound car came in contact with plaintiff sitting in the street. The plaintiff walked to the drug store and at the hospital got out of the car without assistance and walked into the hospital. Two doctors who testified stated that they had examined the x-rays and that they showed no trauma other than everyday living.

The case which resulted in the disagreement by the jury commenced on October 11, 1962. The trial was concluded and the case went to the jury about 3:00 p.m. Thursday, October 18, 1962.

On October 18, 1962 the assignment judge for the Circuit and Superior Courts of Cook County assigned the case of Young v. Chicago Transit Authority, No. 55C 14755, to the trial judge for trial immediately upon the conclusion of the instant case. The case of Young v. Chicago Transit Authority, No. 55C 14755,

■■■■■■■■

went to trial before the trial judge on the morning of October 19, 1962.

At about 3:00 p.m. on Thursday, October 18, 1962, Reese Hubbard, the attorney who represented the defendant in the instant case in both previous trials, called Judge Richard B. Austin, Judge of the United States District Court, and informed Judge Austin that this case had gone to the jury and he was ready to go to trial in the case of Horvath v. Suster, No. 61C 763, a case being held by Judge Austin. Judge Austin informed Reese Hubbard he should consider himself on trial and to appear before him at the opening of court on Friday, October 19. The jury in the case before us, having failed to agree, was discharged at 12:00 p.m. October 18.

On the morning of October 19 the case of Young v. Chicago Transfer Authority, No. 55C 14755, went to trial before the trial judge. Walton Alexander, a clerk in the defendant's counsel's office, went to Judge Canel's courtroom to pick up defendant's exhibits, which the jury had returned to the clerk of the court. When he arrived at the courtroom at 9:30 a.m. the case of Young v. Chicago Transit Authority was on trial. Walton Alexander, who made one of the affidavits in support of the petition to vacate the judgment, stated that he informed the trial judge that Reese Hubbard was on trial in the Federal Court before Judge Austin. He further stated that the trial judge entered an order in this case reciting that the disagreement of the jury be spread of record, and that the case be called on Monday, October 22, 1962 for further disposition.

There is some dispute as to whether Mr. Alexander notified the trial judge on October 19, 1962 that Reese Hubbard was engaged in trial before Judge Austin in the Federal Court. The report of preliminary proceedings, filed November 7, 1962, contains the statement by the trial judge made on the morning of

October 22, 1962 which related to what transpired on the morning of Friday, the 19th of October. He stated that in the presence of Mr. Alexander and Mr. Altman, the attorney for the plaintiff, he asked whether or not there was a possibility of a settlement, and that Mr. Alexander stated that if the judge would hold it over until Monday morning they would attempt to settle the matter. The judge further said at that time that if it was not settled by Monday morning he would hold the case for disposition and it would be settled or tried.

The report of preliminary proceedings showed that Reese Hubbard appeared on behalf of the defendant on the 22nd day of October, 1962. This is an error, which is obvious from the context of the report. Mr. Hubbard was not present nor was Mr. Alexander there to represent him. Mr. Alexander, however, had been in the court earlier on the morning of October 22 and had also been in the court on the morning of October 19. The judge stated on October 22, 1962 that Mr. Hubbard called and said he was engaged before Judge Austin and the trial judge advised him to have one of the lawyers in his office in court; that he was held for trial and he would have to go to trial today or send in one of the other lawyers in his office to try the case.

The affidavit of Walton Alexander, the clerk in Mr. Hubbard's office, stated that on the morning of October 19, at about 9:30 a.m., he went to the courtroom of the trial judge for the purpose of getting the defendant's exhibits, and at that time the trial judge was actually trying another case, and that the trial judge jokingly asked Alexander if the defendant's counsel in *Ryan v. Monson* would be ready to go to trial again in about fifteen minutes. His response to the judge was that Reese Hubbard was on trial before Judge Austin in the U. S. District Court. That on

Monday, October 22, 1962 he again went to the trial judge's courtroom and the instant case was called about 9:20 a.m. The trial judge stated that the instant case would have to go to trial as soon as the case on trial was finished. Alexander further stated that he told the trial judge that Reese Hubbard, defendant's attorney, was still on trial before Judge Austin; that he, Alexander, thereupon left the courtroom.

During the morning of October 22, 1962 the case of Young v. Chicago Transit Authority, which had been on trial before the trial judge herein, was settled.

The affidavit of Reese Hubbard stated that on Friday morning, October 19, an order was entered by the trial judge setting the cause for 9:00 a.m. on October 22, 1962 for further disposition. That on Friday morning, October 19, 1962, the said Reese Hubbard appeared before Judge Austin, and that eight jurors were selected and the case was then continued until Monday, October 22, 1962. That thereupon he proceeded with the trial before Judge Austin from day to day until October 26, 1962, when the case was concluded. That on the morning of October 22, 1962, prior to going to the courtroom of Judge Austin, he asked Alexander, a clerk in his office, to inform the trial judge that he was on trial before Judge Austin, and that he assumed, because of his experience, that the trial judge would send the cause back for reassignment, or would hold the same until the case on trial in the Federal Court could be terminated. That on the morning of October 22 he received a call, while in the courtroom of Judge Richard B. Austin, from his secretary advising him that she had received a call from the trial judge directing that he should try the instant case; that he called the trial judge and advised him that he was on trial before Judge Austin and was unable to proceed before the trial judge. That the trial judge asked if he did not have someone in his office who could try the case;

that he advised the trial judge that he had no one available, and that no one else could get prepared to try the case as there were approximately 600 pages of transcript in the first trial and the second trial had not been written up; that if Judge Austin would declare a mistrial and release him he would be ready to proceed with the trial in the instant case; that he requested Judge Austin to declare a mistrial and Judge Austin stated that he was not willing to declare a mistrial. Judge Austin said he would and did telephone and advise the trial judge that Reese Hubbard was on trial before him and would be on trial for two or three more days. That he first learned that judgment had been entered in the instant case when he read the newspaper on the morning of October 23, 1962. He further stated that the instant case had not been continued on the motion of the defendant.

Judge Austin executed an affidavit attached to the petition to vacate the judgment setting forth his telephone call to the trial judge and in general substantiating the statement made by Mr. Hubbard.

Sidney S. Altman, attorney for Thomas T. Ryan, filed an answer to the petition to vacate the judgment in which he set forth the nature of the case; that on the morning of Friday, October 19, 1962, at about 9:00 a.m. he was advised by the trial judge that the case would go to trial again and to be ready; that he sent out his subpoenas for service and notified his plaintiff to be available; that the case did not go to trial that day because an effort to attempt settlement by defendant's attorneys was to be made; that he did not hear from defendant's attorney and appeared on Monday, October 22, 1962 before the trial judge, who admonished him and Mr. Alexander to be ready to go to trial in a short time and to expect a call at their offices when to start; that he received a call about 10:15 a.m. to return to court, which he did with his

plaintiff and process server; that he had one witness on the way and others ready to come on call; that upon the failure of Mr. Reese Hubbard or anyone else to appear to represent the defendant, the trial judge instructed the prospective jurors to return at 2:00 p.m. when they would proceed to trial. He further alleged in his answer that there were three other competent attorneys who could have defended this case; that Sam L. Miller, a member of the firm of Hubbard, Hubbard, O'Brien & Hall, Edward T. O'Brien, a member of the same law firm, and Mr. A. G. Hubbard, all had some familiarity with the case. However, during the oral argument before us Mr. Altman, the attorney for the plaintiff, conceded that Mr. A. G. Hubbard could not have tried this case at that time. Messrs. Miller and O'Brien both made affidavits that Reese Hubbard is the only attorney for the defendant; that each was engaged on the morning of October 22, 1962 and that each would have needed several days to prepare himself to try this case.

Reese Hubbard further stated in his original affidavit that it was his experience and the experience of other trial lawyers in Cook County that when a jury disagreed the case was reassigned to another judge for trial.

Defendant contends that he was entitled, as a matter of right, to have the case held once under Rule 6.1 of the Rules of the Circuit and Superior courts on the ground that the defendant's attorney was engaged; that proceeding with the trial in the absence of defendant's counsel until the case in the Federal court, then on trial, was concluded was an abuse of discretion and that it was error for the trial judge to hold the case contrary to the long-standing practice in the Superior Court, that upon a mistrial for failure of the jury to agree, the case would be sent back to the assignment judge for reassignment.

As pointed out in the case of Gray v. Gray, 6 Ill App2d 571, 128 NE2d 602, the assignment system had been adopted by all great metropolitan courts of the country because of the tremendous increase in litigation. That one of the special problems intended to be solved was that of the many motions for continuance on account of prior engagement pressed upon judges by trial lawyers. That it had become the practice for many lawyers having a great many cases on their calendars to enter their individual appearances and to insist that the representation of their clients was personal, so that frequently they would not only have a number of cases on the trial call of an individual calendar, when that system was in effect, but sometimes had cases on five or ten calendars at the same time. The purpose of the assignment system was to solve these problems by placing control of motions for continuance, prior to assignment, in the hands of a single judge, and to assign all cases for trial. The court further in that case commented that when a case has been sent to a judge for trial he must not entertain any further motions for continuance, except perhaps for some extraordinary circumstances arising between the time the case was set down for trial and the time the trial judge proceeded to hear it.

Plaintiff cites the case of Roberts v. McDaniel, 22 Ill App2d 485, wherein the court said on page 490, 161 NE2d 47:

"This was not a complicated case. It involved an intersection automobile accident wherein liability was admitted and only the question of plaintiff's injuries was in contention."

Of course, in the instant case liability was not admitted but was denied and seriously contested.

Needless to say, our bar has not been disciplined to the extent that bars of other jurisdictions have been.

227

With the large backlog of cases pending in Cook County, attorneys for litigants, both plaintiffs and defendants, must make every possible effort to proceed to trial without unnecessary delay. In the instant case the fact that Reese Hubbard was actually engaged in the trial of a case in the Federal District Court before Judge Austin would, no doubt, exculpate him. He, of course, had a legitimate excuse for not being present at the ex parte hearing. However, the engagement of one attorney in a firm does not relieve the firm of responsibility to do all within its power to have someone available for trial. However, the other trial lawyers in the firm presented affidavits as to their unavailability.

Plaintiff contends that this was a simple personal injury case; that it was not complicated and that any of the other lawyers in the law firm could have stepped into the trial without preparation. It was obviously not a simple case for the plaintiff, for in two previous trials, one resulted in a verdict for the defendant, and the other resulted in a disagreement by the jury.

We do not think it is important to determine whether the order setting the case over from October 19 to October 22 was a continuance on the motion of the defendant. Defendant claims that it was not and plaintiff claims that it was a continuance at the request of the defendant. The reason a decision on that point is not controlling is because at the time the order was entered by the trial court on October 19, 1962 Reese Hubbard was already held for trial, and on October 22, 1962 was on trial in the U. S. District Court before Judge Austin. Also on October 19, 1962 the trial court was hearing another case, which was disposed of by settlement during the middle of the forenoon on October 22, 1962.

The Appellate Court in the case of Widucus v. Southwestern Electric Cooperative, Inc., 26 Ill App2d 102, on page 108, 167 NE2d 799 said the following:

"The spirit of the Practice Act is that controversies be speedily determined according to the substantive rights of the parties. This means an undelayed hearing on the merits with both sides present in the courtroom. The allowance of countless delays is a denial of substantial justice to the plaintiff. The hurried entry of a default is a denial of substantial justice to the defendant. Both are abuses which should not be condoned."

Again on page 109 the court said:

"The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits."

In the case of Leathers v. Leathers, 13 Ill2d 348, on page 352, 148 NE2d 773 the court said:

"Plaintiff has cited a number of authorities relating to continuances. In Adcock v. Adcock, 339 Ill App 543, the court held the Civil Practice Act confers broad discretion upon the trial court in the allowance or denial of continuances but that this discretion must be exercised judiciously, and not arbitrarily or capriciously. That a court should not refuse a continuance where the ends of justice clearly require it, and an abuse of discretion in so doing will justify a reversal. (Hearson v. Graudine, 87 Ill 115, 112 ALR 593, 594; In re Estate of Weiss v. Berkovitz, 282 Ill App 502; Crystal Lake Country Club v. Scanlan, 264 Ill App 44.) The court further held that a continuance was improperly denied where counsel was

229

engaged in another proceeding, and particularly where counsel endeavored to have the other proceeding postponed when he perceived a possible conflict in the trials. Nor would the fact that there had been one previous continuance or that the case was set for trial by agreement estop a party from seeking a continuance for just cause. (St. Louis and Southeastern Railway Co. v. Teters, 68 Ill 144.) That the determinative fact in the cases is, apparently, the degree of due diligence exercised by the party seeking the continuance. If the case has been pending over a long period and continued numerous times, a denial of a further continuance has been sustained by the reviewing courts. Johnson v. Theodoron, 324 Ill 543; Spitzer v. Schlatt, 249 Ill 416."

In the case of Crystal Lake Country Club v. Scanlan, 264 Ill App 44, defendant's counsel was ready for trial but was forced into the trial of another case on the same morning. Defendant's other counsel was engaged in trial before another judge. The clerk for defendant's attorneys went to the courtroom to advise the judge that defendant's counsel was engaged and to hold the case until 2:00 p.m. The clerk checked the call and went to another courtroom. When he returned judgment had been entered. Defendant's petition to vacate the judgment was denied. The court on page 48 said the following:

"In the present case there was apparently no desire to avoid the trial and an earnest effort was made to so arrange the engagements for that day that defendant's counsel could be present to try the case. We are inclined to think that the situation called for the exercise of liberality with reference to the motion to vacate and not for a too critical attitude towards defendant's counsel. Up-

230

on condition that plaintiff's attorney be compensated for his time and services and also for the expenses incident to the attendance of plaintiff's witnesses, the court might well have vacated the judgment and set the case down for trial."

Chapter 110, section 50(6), Ill Rev Stats 1963, provides as follows:

"(6). The court may in its discretion, before final order, judgment or decree, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable."

While we realize the problems besetting a conscientious and industrious trial judge in his desire to dispose of cases, nevertheless, we feel that had the trial judge vacated the ex parte judgment upon condition that the defendant compensate the plaintiff's attorney for his time and services, and for expenses incident to the attendance of plaintiff's witnesses, the ends of justice would have been more readily achieved.

Upon remand, compensation for plaintiff's attorney's time and services, hereinabove mentioned, together with expenses incident to the attendance of plaintiff's witnesses, should be assessed against the defendant by the trial judge, and the case should proceed to trial.

The order of the trial court is hereby reversed with instructions to proceed in a manner not inconsistent with this opinion.

Order reversed and cause remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.