# Illinois Official Reports

## Appellate Court

*K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688

| | |
|---|---|
| Appellate Court Caption | K&K IRON WORKS, INC., Plaintiff-Appellee and Counter-defendant, v. MARC REALTY, LLC, Defendant-Appellant (Kenneth Stefan Jones, Midwest Masonry, Inc., Plaintiffs; CMP Construction, Plaintiff-Counterdefendant; Lakeview Athletic Club, Cole Taylor Bank, Chicago Title and Trust Company, Walter Klein, Sr., Walter Klein, Jr., Unknown Necessary Parties, and Unknown Parties, Defendants; LPAC Broadway Realty, LLC, and Klein Construction Services, Inc., Defendants-Counterplaintiffs). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3688 |
| Filed | November 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's denial of defendant's request for a continuance to obtain new counsel after allowing defendant's counsel to withdraw on the day a trial was to begin in litigation that had been proceeding for nearly five years was affirmed, notwithstanding defendant's contention that the "notion" that defendant could find new representation in 10 or even 21 days was "nothing less than chimerical," especially in view of the complex nature of the litigation, since defendant did not seek to obtain new counsel until the day of trial, the record did not support defendant's claims that the case was complex and that proceeding without counsel would result in a six-figure judgment against defendant, defendant had plenty of time to request a continuance to obtain new counsel before the trial date, and defendant did not present any reasoned argument that it was "harmed" by the denial of a continuance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-CH-46647, 08-L-8886, 09-L-6760; the Hon. Lisa R. Curcio, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Richard D. Grossman, of Law Offices of Richard D. Grossman, of Chicago, for appellant. |
| | Paul N. Bonadies and Justin DeLuca, both of Dahl & Bonadies, of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Gordon concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant Marc Realty, LLC, appeals from the circuit court's denial of its request for a continuance after allowing defendant's attorney to withdraw on the day trial was set to begin, after approximately five years of litigation. On appeal, defendant contends that the circuit court abused its discretion when it allowed defense counsel to withdraw and subsequently denied defendant's motion for a continuance. We affirm.

¶ 2    We will discuss the facts of the underlying litigation only to the extent necessary to understand the current appeal. According to the complaint filed by K&K Iron Works, Inc., and a counterclaim filed by Klein Construction Services, Inc., in 2005, LPAC Broadway Realty, LLC, owned property at 3212 North Broadway Avenue (property) in Chicago, Illinois. Marc Realty was a "member/manager" and an agent of LPAC. In July 2005, LPAC entered into a contract with Klein to serve as the general contractor for the construction of the Lakeview Athletic Club at the property.

¶ 3    In September 2005, Klein entered into a contract with K&K which provided that K&K would provide labor and materials to "properly finish and install structural steel and miscellaneous iron" on the property for the sum of $1,345,000. K&K began performance on the project shortly after and had completed all work required by the contract in August 2007.

¶ 4    In the interim, LPAC terminated Klein as the general contractor of the project. In July 2007, Klein assigned its subcontract with K&K to LPAC. Under the assignment, LPAC agreed to "assume and perform all of the obligations" of Klein under the September 2005 subcontract. K&K further alleged that Marc Realty also assumed the subcontract and that, after assuming the subcontract, Marc Realty "held itself out as construction manager and general contractor on the project, including monitoring work on the project and making direct payments to K&K and other subcontractors for work performed."

¶ 5    In August 2008, K&K filed its complaint against Klein, LPAC, and Marc Realty, alleging a breach of contract claim against LPAC and Marc Realty (count I), *quantum meriut* as an alternative claim against LPAC and Marc Realty (count II), breach of contract against Klein

(count III), and *quantum meruit* as an alternative claim against Klein.[1] K&K alleged that LPAC and Marc Realty owed K&K an additional $228,515.20 plus interest for the work performed. Bradley Staubus of Esposito & Staubus represented LPAC, Marc Realty, and Klein throughout the proceedings.

¶ 6    In February 2009, Klein filed its answer to K&K's complaint. In June 2009, LPAC and Marc Realty filed a joint answer to K&K's complaint and filed separate amended answers to the complaint in December 2009. Marc Realty's amended answer generally denied the allegations in K&K's complaint.

¶ 7    In July 2010, LPAC and Klein filed counterclaims and affirmative defenses against K&K. The circuit court dismissed LPAC and Klein's counterclaims and affirmative defenses in December 2010, and twice dismissed their subsequent amended counterclaims and affirmative defenses. Marc Realty never filed a counterclaim or any affirmative defense against K&K.

¶ 8    In October 2011, LPAC and Klein filed their third amended counterclaim against K&K, alleging, in pertinent part, delay damages resulting in lost profits estimated between $900,000 and $1,200,000.

¶ 9    In November 2011, K&K filed an answer and affirmative defenses to LPAC and Klein's third amended counterclaim.

¶ 10    In January 2012, K&K filed a motion for partial summary judgment against Klein as to Klein's third amended counterclaim, which the circuit court granted in March 2012.

¶ 11    In December 2012, the circuit court entered a written order setting the case for trial on June 11, 2013. Oral discovery was to be completed on January 31, 2013, but the circuit court granted extensions of time for the parties to complete oral discovery in February and March 2013.

¶ 12    In May 2013, the circuit court entered an order setting the matter for trial on October 1, 2013.

¶ 13    In June 2013, K&K filed a motion for partial summary judgment against LPAC's third amended counterclaim as to the issue of delay damages based on lost profits, alleging that the terms of the subcontract agreement precluded LPAC from obtaining delay damages against K&K and that LPAC had failed to identify any "opinions or testimony that K&K was the cause of any delays on the project which would entitle LPAC to obtain delay damages" in its answers to the Supreme Court Rule 213 interrogatories.

¶ 14    On September 12, 2013, the circuit court granted K&K's motion for partial summary judgment against LPAC's third amended counterclaim on the issue of delay damages, finding that LPAC "failed to disclose or identify any testimony related to lost profits sustained by it."

¶ 15    On September 13, 2013, the circuit court entered a final trial order, which stated that trial would commence on October 1, 2013, at 10:30 a.m.

¶ 16    On September 20, 2013, LPAC filed an emergency motion to reconsider the court's September 12 order and continue the trial to allow limited discovery. The same day, after hearing oral argument, the circuit court denied LPAC's emergency motion.

---

[1]In December 2008, Kenneth Stefan Jones and CMP Construction Company, who are not parties to this appeal, filed suit against various entities related to the Lakeview Athletic Club construction project, including Klein and LPAC. In June 2009, the cases were consolidated. However, the details of the Kenneth Stefan Jones and CMP lawsuit are not relevant to the present appeal.

¶ 17    On October 1, 2013, the circuit court entered an order continuing the trial to October 2, 2013, at 10:30 a.m. No transcript from the proceedings on October 1 was included in the record on appeal.

¶ 18    On October 2, 2013, the parties reported that they had been unable to reach a settlement. The following exchange occurred:

"MR. BONADIES [counsel for K&K]: We worked for a long time yesterday, as you know, coming to a settlement or a stipulated judgment. We went back–both of us–to our office and drafted the stipulated judgment, with the indication that it was going to get either commented on, approved, something, with respect to the defendant. We wasted an entire day of trial, and we don't even get a response.

I have subpoenaed witnesses that now are working on the finishing of the Red Line that are working for other employers that I–in jockeying the scheduling–and we don't even get the courtesy of, 'This isn't accepted.' Nothing. We're still in limbo. ***

MR. STAUBUS: Before we get into this, I received a call right before the matter before you at 9:30–right before that I got a call from the client, and they have terminated my services, and they have ordered me to withdraw on behalf of the LPAC and Marc.

I am still in for Klein. I have talked to Mr. Klein about that, and I still represent them, but that's what I was ordered to do this morning. There is an owner's rep here, Mr. Allen Glass, who will confirm that. And I really can't get into too much more because of attorney-client privilege.

THE COURT: I don't expect you to tell me anything else, Mr. Staubus, but I certainly hope they're prepared to go forward with trial today. And if Mr. Glass would like to step up, I would be happy to talk with him. But this case has been scheduled for trial for months. There has been extensive trial preparation. The Court has scheduled the time.

We were going to go to trial yesterday morning when there was an indication that perhaps, with the Court's assistance, a settlement might be reached. When we left yesterday afternoon, the understanding was that if the settlement was not possible, we would begin trial this morning. And I most certainly am not going to inconvenience everyone else because they have decided–and when I say they, I mean LPAC, and I assume, Marc Realty–have decided at this moment this morning that they no longer wish to have you represent them. That they've known about this for quite some time, and I cannot fathom how they could expect that this sudden decision would result in the Court continuing the trial. So–

MR. GLASS: I'm the rep of those two parties. These owners last night decided that there is an inherent conflict now with Mr. Staubus that just arose recently as a result of one of this Court's orders, and they just don't believe that it's possible for him to continue to represent us. And they will have–they will have another trial attorney be [*sic*] entering an appearance as soon as possible, but–

THE COURT: Mr. Glass, the order that you're referring to was entered quite some time ago, and it was then reconsidered by this Court. They have been aware of that order, and to decide when we are here for trial that there is an inherent conflict as a result of that order is unacceptable.

- 4 -

> If they're not prepared to go to trial today, I'm prepared to allow Mr. Bonadies to go forward with his case, and allow Mr. Staubus to go forward with Klein's case, and they will be unrepresented. And I suppose that may give them another issue for appeal, but I believe firmly that, given the history of this case, that is within the Court's discretion, and I will exercise it; that is my ruling.
>
> ***
>
> MR. STAUBUS: So I have obviously withdrawn from LPAC and Marc Realty. I represent just Klein.
>
> THE COURT: We'll enter an order to that effect, and the order will further reflect that the Court will not continue the trial on any of the claims, given the late nature of this decision on the part of LPAC and Marc Realty, and for the reasons articulated, fortunately on the record.
>
> MR. GLASS: Will LPAC and Marc Realty have the right to have another attorney step in whenever the next date of this case may be in front of the Judge?
>
> THE COURT: The case is before me today. I'm going to trial.
>
> ***
>
> They have, frankly, made their bed, and I'm not making any rulings whatsoever. They've decided to terminate Mr. Staubus's representation. They are before the court. They are unprepared to substitute counsel today. That's the status."

¶ 19 Just before trial, the attorneys for Klein and K&K reached an agreement for a stipulated judgment as to count III of K&K's complaint, and K&K withdrew count IV of its complaint. The trial was then held with Allen Glass sitting at counsel table as a representative for LPAC and Marc Realty. At the trial's conclusion, the circuit court entered judgment in favor of K&K and against LPAC and Marc Realty.

¶ 20 On October 3, 2014, the circuit court entered a written final judgment order that stated:

> "1. Pursuant to an Order entered on May 21, 2013, this matter was set for trial on October 1, 2013; at the commencement of trial, the parties asked the Court to conduct a settlement conference and the Court agreed. After negotiations, the parties believed they could reach an agreement. The trial was continued to October 2, 2103 for the parties to enter a stipulated judgment or to begin their presentation of evidence.
>
> 2. On October 2, 2013, at the start of trial, a corporate representative of LPAC Broadway Realty, LLC and Marc Realty, LLC, represented to the Court that [LPAC] and [Marc Realty] had discharged their attorney Mr. Bradley K. Staubus.
>
> 3. The representative of [LPAC] and [Marc Realty] made an oral request for a continuance of the trial in order to find substitute counsel.
>
> 4. [LPAC] and [Marc Realty]'s motion to continue was denied based on lack of good cause."

The court further found that LPAC and Marc Realty failed to present any evidence in opposition to K&K's complaint and that LPAC failed to present any evidence in support of its third amended counterclaim. The court entered judgment in favor of K&K and against: (1) Klein Construction as to count III of K&K's complaint, in the amount of $152,431.98; (2) LPAC and Marc Realty, jointly and severally, as to count I of K&K's complaint, in the amount of $152,431.98, plus costs; and (3) LPAC as to LPAC's third amended counterclaim, plus costs. Only Marc Realty appeals the judgment and raises one issue.

¶ 21    Marc Realty contends that the trial court erred in allowing Marc Realty's counsel to withdraw and then denying its motion for a continuance to obtain new counsel.

¶ 22    It is well settled that a litigant does not have an absolute right to a continuance. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430 (1996). The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be disturbed on appeal "unless it has resulted in a palpable injustice or constitutes a manifest abuse of discretion." *Wine v. Bauerfreund*, 155 Ill. App. 3d 19, 22 (1987). A circuit court's ruling is considered an abuse of discretion when it is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 20.

¶ 23    Section 2-1007 of the Code of Civil Procedure generally states that the court has the discretion to grant additional time for "the doing of any act or the taking of any step or proceeding prior to judgment" on good cause shown. 735 ILCS 5/2-1007 (West 2012). It further provides that the "circumstances, terms and conditions under which continuances may be granted, the time and manner in which application therefor shall be made, and the effect thereof, shall be according to rules." *Id*. According to Supreme Court Rule 231(f), "[n]o motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." Ill. S. Ct. R. 231(f) (eff. Jan. 1, 1970). Once the case reaches the trial stage, the party seeking a continuance must provide the court with "especially grave reasons" for the continuance because of the potential inconvenience to the witnesses, the parties, and the court. *In re Marriage of Ward*, 282 Ill. App. 3d at 430-31. We also observe that, according to local court rules, a continuance "shall not be granted upon the ground of substitution or addition of attorneys." Cook Co. Cir. Ct. R. 5.2(b) (July 1, 1976).

¶ 24    In the present case, on the day of trial, counsel for Marc Realty informed the court that he had been terminated by Marc Realty that morning. The corporate representative who was present, who was also an attorney, informed the court that the reason counsel was being terminated was "an inherent conflict *** that just arose recently as a result of one of this Court's orders." The request was made orally and consisted solely of the remarks noted above. These statements that an "inherent conflict" exists unsupported by any facts beyond a vague reference to a previous court ruling do not amount to a sufficiently grave reason to require the granting of a continuance.

¶ 25    For the first time in its appellate brief, Marc Realty embellishes its reasons for terminating counsel the morning of trial, saying it had "lost confidence in its attorney and represented to the court that it was now 'in conflict' with its attorney, implicitly suggesting that it was contemplating suing its attorney for malpractice." However, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 121226, ¶ 28. These conclusory statements presented in Marc Realty's appellate brief for the first time on appeal do not amount to good cause or sufficient grounds for a continuance under any authority of which we are aware.

¶ 26    Forfeiture aside, were we to consider Marc Realty's reasons for terminating its attorney the day of trial, an important consideration for a court in determining the propriety of a continuance due to counsel's actions is the degree of diligence exercised by the party seeking the continuance. *Meyerson v. Software Club of America, Inc.*, 142 Ill. App. 3d 87, 92 (1986). Here, the record clearly demonstrates that Marc Realty had multiple prior opportunities to

request a continuance to obtain new counsel if it was unhappy with its representation: the partial summary judgment order was entered against LPAC 19 days before the original trial date of October 1, 2013; the original trial date was set 18 days before that date; and LPAC's motion to reconsider was denied 11 days before the original trial date. Although Marc Realty has not argued how the adverse ruling to another party created a conflict for itself, Marc Realty nonetheless could have terminated its attorney and filed a motion to continue at any time during the 19-day period preceding the original trial date.

¶ 27 On October 1, 2013, the record shows that the circuit court entered an order continuing the trial to the next day, October 2, 2013. Although the transcript from October 1 is not part of the record on appeal, the transcript from October 2 and the orders entered by the circuit court indicate that the parties appeared before the circuit court on October 1, ready for trial, but requested to continue the trial one day because there was a possibility the parties could reach a settlement or a stipulated judgment. However, it was not until the following day, the day that trial was set to begin and a full 20 days after the cause of the "inherent conflict," that Marc Realty fired its attorney and sought a continuance of the trial to obtain new counsel. For Marc Realty to appear on October 2, terminate counsel, and then request a continuance to obtain new counsel the day after counsel represented Marc Realty in trying to reach a settlement or a stipulated judgment appears disingenuous, as it must have appeared to the trial court. In denying the continuance on October 2, the circuit court said that the understanding on the afternoon of October 1 was that if a settlement was not possible the trial would begin on October 2 and that the court would not inconvenience the other parties just because LPAC and Marc Realty decided to fire their attorney the morning of trial. That the request for a continuance was because of an "inherent conflict" is not supported by the record. Instead, the record demonstrates Marc Realty's lack of diligence in attempting to obtain new counsel before trial was set to begin. It was an obvious attempt to continue the case for trial without good cause and, under these circumstances, we cannot find the trial court abused its discretion.

¶ 28 Marc Realty also contends that "the notion it could find a new attorney willing to step into a complex piece of five-year litigation with multiple parties, generating thousands and thousands of documents and go to trial on it in *ten days* (or twenty-one days) is nothing less than chimerical." (Emphasis in original.) However, Marc Realty did not even attempt to seek a continuance to obtain new counsel until the day of trial. In addition, the record does not support Marc Realty's assertion that its case was a "complex piece of five-year litigation, generating thousands and thousands of documents. *** To require Defendant to navigate the shoals of such a proceeding without a lawyer condemned the Defendant to a six-figure judgment against it." Contrary to Marc Realty's argument, the record does not show that this was a complex piece of litigation. The complaint was filed in August 2008. Subsequently LPAC and Klein both filed counterclaims and affirmative defenses against K&K which were dismissed. Then LPAC and Klein twice filed amended counterclaims and affidavits which were also dismissed. Notably, Marc Realty never filed any counterclaims or affirmative defenses in response to K&K's complaint and alleged no damages; its answer simply generally denied the allegations in the complaint. The record also shows that the circuit court set the case for trial once, continued the cause to allow for the completion of oral discovery, and then set the case for trial on October 1. Again, contrary to Marc Realty's assertion, this action was not terribly complicated, but was primarily a dispute over alleged money damages that remained unpaid for the completion of a construction contract. K&K alleged that it was owed $228,515.20 and

ultimately was awarded $152,431.98. Although the damages awarded were in the six-figure range, that figure alone does not make the litigation complex. We cannot say the circuit court's decision to deny the continuance was a manifest abuse of discretion.

¶ 29        Numerous decisions support our conclusion. For example, in *Meyerson*, 142 Ill. App. 3d 87, the plaintiff filed a complaint against the defendant corporation, seeking to recover for advertising services rendered to the defendant. *Id*. at 88. The cause was originally set for trial on July 1, 1985, but was continued by agreement on that date and on July 8, 1985. *Id*. at 89. In a letter dated July 3, 1985, defense counsel asked the circuit court to set the case for trial on July 25, 1985. *Id*. On July 25, 1985, the plaintiff was present in court with her attorney, but defense counsel requested a continuance because the president of the defendant corporation was ill. *Id*. The parties were unable to agree on a date and defense counsel informed the circuit court that he would be on vacation the first two weeks in August; the case was then continued to July 29. *Id*. at 89-90. The circuit court denied motions to continue from the defendant on July 29 and 30, 1985, and ultimately set the case for August 1, 1985. *Id*. at 90. In one of the motions for continuance, the defendant alleged:

> "[E]arlier that day [July 29] defendant had appeared in court at 9:30 a.m. and was ready for trial, that the court on its own motion delayed the matter until 2 p.m., that at 10 a.m. defendant discharged its counsel, that at 10:30 a.m. a pretrial conference was held in the chambers of Judge Ahern and the court on its own motion reset the case for trial on Thursday, August 1, 1985, at 2 p.m. although defendant's counsel informed the court that he had just been discharged and was scheduled for a vacation from July 31, 1985, through August 9, 1985. Counsel stated he had consulted with another law firm which 'will represent' defendant 'provided the trial date be continued approximately' 30 days. Defendant asserted it was being denied counsel of its choice." *Id*.

¶ 30        On August 1, 1985, the president of the defendant corporation appeared without counsel and tendered an affidavit to the circuit court which indicated that he could not proceed with trial because of a medical condition *Id*. at 91. The affidavit also stated that the defendant corporation had dismissed counsel "because counsel was not familiar with the complex, specialized issues involved in the case." *Id*. "After informing the court that discharged counsel had told him that he would not be present, [the president of the defendant corporation] asked and was granted permission to leave the courtroom." *Id*. The same day, the court entered a judgment for the plaintiff. *Id*. at 88.

¶ 31        On appeal, the defendant argued that the circuit court's actions deprived it of its "constitutionally protected right to its day in court." *Id*. at 91. Specifically, the defendant reasoned that because, as a corporation, it could only appear in court through a duly licensed attorney, the circuit court's conduct toward defense counsel "capriciously and arbitrarily abridged its constitutionally protected due process rights to notice, and an opportunity to be heard and to defend in an orderly proceeding." *Id*. at 91-92. On appeal, the court affirmed the judgment of the circuit court. *Id*. at 93. The court first observed that the defendant had not cited "any case in which a trial court has been found to have abused its discretion in denying a continuance, where, as here, counsel would have had to interrupt his vacation plans." *Id*. at 92. The court further explained:

> "Having discharged its counsel at least in part due to defendant's opinion that its counsel lacked specific experience 'in the complex area of an advertising agency's

liability to its client,' we do not see how defendant has reason to complain that its counsel did not appear at the trial." *Id*. at 92-93.

¶ 32    We acknowledge that, like the defendant in *Meyerson*, as a corporation, Marc Realty may only litigate through a duly licensed attorney. *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 737 (1997). However, Marc Realty chose to dismiss its counsel the morning of trial due to its opinion that there was an inherent conflict. Moreover, contrary to Marc Realty's contention, there is no constitutional right to counsel in a civil proceeding between corporations. *Rodriguez v. Bagnola*, 297 Ill. App. 3d 906, 921 (1998); see also *In re Marriage of Schmidt*, 241 Ill. App. 3d 47, 48-49 (1993) (neither the United States Constitution nor the Illinois Constitution provides a right to counsel in a dissolution proceeding); *Hermann v. Hermann*, 219 Ill. App. 3d 195, 198 (1991) ("It would be an extravagant expansion of the sixth amendment to hold that it applies equally to civil and criminal proceedings."). A representative for Marc Realty was present and the circuit court explained that it would allow Mr. Staubus to withdraw his representation but would proceed to trial. Similar to the *Meyerson* court, we do not see how Marc Realty has reason to complain that it did not have counsel at trial.

¶ 33    In addition, in *Thomas v. Thomas*, 23 Ill. App. 3d 936 (1974), the plaintiff appealed from an order entered by the circuit court following proceedings enrolling an Indiana divorce degree in Illinois. *Id*. at 937. On appeal, she claimed that the circuit court erred in denying her request for a continuance. *Id*. at 939. The plaintiff's attorney withdrew from the case after serving notice of his intention to withdraw on July 5, 1973. *Id*. On July 12, the plaintiff appeared before the circuit court and the trial judge advised that she should obtain counsel for the trial, scheduled for July 17, but also advised that the plaintiff could file for a continuance if she felt she would need more time. *Id*. The plaintiff indicated that she would have counsel for trial and did not request a continuance. *Id*. On July 17, "during the course of the trial's proceedings, for the first time" the plaintiff requested a continuance to obtain counsel. *Id*. In finding the circuit court properly exercised its judicial discretion, the appellate court explained:

> "Although absence of counsel is one factor to take into consideration in deciding on a motion to continue, it does not entitle a party to a continuance as a matter of right. [Citation.] Plaintiff had ample opportunity to extend the time for trial in order to obtain counsel. We find that the denial of plaintiff's motion for a continuance, particularly where no prejudice resulted to the plaintiff, was a proper exercise of the trial judge's discretion." *Id*. at 940-41.

¶ 34    Similarly in the present case, Marc Realty had ample opportunity to request a continuance to obtain new counsel before the trial date. Moreover, although Marc Realty argues that it was "harmed" by the denial of its request for a continuance, it has failed to present any reasoned argument as to prejudice it suffered as a result. "The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver." *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009). Therefore, like the *Thomas* court, we find the circuit court properly exercised its discretion in denying Marc Realty's motion for a continuance. See also *Wine*, 155 Ill. App. 3d 19 (no abuse of discretion in denying a motion for continuance where defense counsel made an oral request on the morning of trial because the defendant was attending school in Iowa); *Martinez v. Scandroli*, 130 Ill. App. 3d 712 (1985) (no abuse of discretion in denying a motion for a continuance where the case was set for a September 26 trial date on August 19, the plaintiff retained new counsel in early September, and counsel sought a continuance on September 19

and 23 because he had not had sufficient time to prepare); *Parker v. Newman*, 10 Ill. App. 3d 1019 (1973) (no abuse of discretion in denying a motion for continuance filed four days before the trial and renewed on the day of trial where the plaintiffs showed a lack of due diligence because the defendant was out of the country for the trial, the plaintiffs' attorney refused to participate in the defendant's evidence deposition just before trial, and on the day of trial, the plaintiffs' attorney said he would not go to trial unless the defendant was personally present).

¶ 35    We must also point out that there was no adverse ruling entered against Marc Realty by the circuit court prior to trial. The party apparently impacted by the previous court order, LPAC, has chosen not to appeal.

¶ 36    Marc Realty also suggests in its appellate brief that, in denying the motion for a continuance to obtain new counsel, the circuit court should have denied counsel's motion to withdraw. First, we note that, once again, Marc Realty did not raise this argument before the circuit court and has therefore waived the argument on appeal. *Parikh*, 2012 IL App (1st) 121226, ¶ 28. Nonetheless, we find that the circuit court acted properly in allowing counsel to withdraw despite denying the motion for a continuance. On the day of trial, counsel indicated to the circuit court that he had been fired by LPAC and Marc Realty and, as a result, was withdrawing. After the court allowed counsel to withdraw and indicated it would go forward with the trial, the corporate representative for Marc Realty never suggested to the court that Marc Realty might want to retain its previously fired attorney.

¶ 37    For the first time in its reply brief, Marc Realty relies on Illinois Supreme Court Rule 13(c)(2) (eff. Jan. 4, 2013) to support its conclusion that the trial court erred in denying its motion for a continuance. However, arguments not raised in the opening brief are considered waived and may not be raised for the first time in a reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Waiver aside, we find that Rule 13(c)(2) is not applicable to the present case.

¶ 38    Rule 13(c)(2) provides:

> "An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw ***. Such notice shall advise said party that to insure notice of any action in said cause, he should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, his supplementary appearance stating therein an address at which service of notices of other documents may be had upon him." Ill. S. Ct. R. 13(c)(2) (eff. Jan. 4, 2013).

¶ 39    We first note that the cases Marc Realty cites in support of its Rule 13 arguments are distinguishable. See *In re Marriage of Miller*, 273 Ill. App. 3d 64 (1995); *Ali v. Jones*, 239 Ill. App. 3d 844 (1993). In *Ali*, the plaintiff's counsel was granted leave to withdraw just 11 days before trial. *Ali*, 239 Ill. App. 3d at 846. On the day of trial, the plaintiff sought a motion for a continuance to obtain counsel. *Id*. The trial court noted the action was nearly eight years old and the plaintiff had been given every opportunity to pursue his cause of action, then it dismissed the cause with prejudice. *Id*. at 847. On appeal, the reviewing court found the circuit court had abused its discretion because the plaintiff's attorney withdrawing just before trial was a sufficiently grave reason to require a continuance. *Id*. The court also relied on Rule 13(c)(2), finding that "given the 21-day transition period that Rule 13 contemplates for the continuation of representation, the trial court should have allowed the plaintiff's continuance." *Id*. at 849.

¶ 40    In *Miller*, the respondent went through four different attorneys from the time the petitioner filed his petition for dissolution of marriage, also seeking permanent custody of the couple's minor child, to the date the hearing was set. *Miller*, 273 Ill. App. 3d at 65-67. The day of the hearing, the respondent's third attorney renewed a prior motion to withdraw, asked for a continuance, but also said he was ready to proceed to trial if the respondent did not agree to his withdrawal. *Id.* at 66. The court granted the motion to withdraw, continued the hearing to the next day, and informed the respondent that she should either get another attorney or be prepared to proceed *pro se* at the hearing. *Id.* The next day, the respondent's fourth attorney entered his appearance. *Id.* at 67. He explained to the court that he had been retained that morning but indicated that he was " 'ready' " to proceed. *Id.* After the hearing, the court awarded permanent custody of the child to the petitioner. *Id.* On appeal, the respondent contended that the court abused its discretion in denying her motion for a continuance to secure new counsel after granting her attorney's motion to withdraw. *Id.* Although the court agreed that, pursuant to Rule 13(c)(2), the circuit court should have granted the respondent a continuance of at least 21 days after entry of the order granting withdrawal of her attorney to attain new counsel, the respondent had waived appeal of the error because her fourth attorney did not seek a continuance and instead indicated he was ready to proceed. *Id.* at 69.

¶ 41    In both *Ali* and *Miller*, the attorneys in question filed motions to withdraw of their own volition and, therefore, the court was required to abide by Rule 13(c)(2). In contrast, in the present case, Marc Realty dismissed its own attorney the day of trial. We conclude that, under the circumstances presented in this case, Rule 13(c)(2) is inapplicable. See *In re RoseLee Ann L.*, 307 Ill. App. 3d 907, 912 (1999) (finding that Rule 13 allows an attorney to "end the attorney-client relationship with or without cause so long as the client is not left in a position where he is prejudiced").

¶ 42    We find the other cases Marc Realty relies on in support of its argument to be distinguishable. See *In re Marriage of Fahy*, 208 Ill. App. 3d 677 (1991); *Rutzen v. Pertile*, 172 Ill. App. 3d 968 (1988); *Ullmen v. Department of Registration & Education*, 67 Ill. App. 3d 519 (1978); *Ryan v. Monson*, 47 Ill. App. 2d 220 (1964). In *Fahy*, the petitioner filed a petition for dissolution of marriage and the trial court ultimately entered a judgment dissolving the marriage and awarding custody of the couple's four minor children to the petitioner. *Fahy*, 208 Ill. App. 3d at 683. On appeal, the respondent argued that the circuit court made several errors that required reversal of its ruling. *Id.* The appellate court reversed the decision of the circuit court and remanded the cause for further proceedings. *Id.* at 700. In pertinent part, the appellate court first concluded that the trial court erred by holding the respondent "in default" with respect to the petitioner's posttrial petitions for attorney fees and for sanctions and by requiring the respondent's attorneys to either sign the respondent's pleadings or withdraw from the case, misapplying the new version of a statute. *Id.* at 683, 686-87. The court then found:

> "Given the foregoing, we further agree with respondent that the trial court denied him due process of law when, after his second counsel was allowed to withdraw in lieu of signing the refiled answer, the court denied respondent's motion for a continuance to obtain new counsel and compelled respondent to represent himself at trial *instanter*." *Id.* at 688.

¶ 43    While in *Fahy* the appellate court found that the respondent was forced to go to trial without representation due to the circuit court's errors, in the present case the circuit court did not commit any procedural errors that forced Marc Realty to go to trial without representation.

Instead, Marc Realty went to trial without representation because on the morning of trial it fired its attorney. Therefore, *Fahy* is inapplicable to the present case.

¶ 44 In *Rutzen*, the defendant and his wife were flying in from Florida on the day of trial and were due to land at 1:30 p.m. *Rutzen*, 172 Ill. App. 3d at 971. After all the other witnesses had been presented, the circuit court granted a brief continuance until 3:30 p.m. *Id*. At 3:30 p.m., defense counsel informed the court that the defendant and his wife had landed at the airport at 3:20 p.m. and were approximately one hour away, and requested a continuance pending their arrival. *Id*. The circuit court denied the motion. *Id*. The appellate court concluded that, "where the witnesses are available and the proceedings have not yet concluded," the circuit court's denial of a continuance was an abuse of discretion. *Id*. at 974-75. In the present case, Marc Realty did not seek a continuance of a few hours because of witnesses who were on their way to testify at trial and we therefore find *Rutzen* to be irrelevant.

¶ 45 In *Ullmen*, the plaintiff and her attorney requested a continuance the day before a hearing before a committee on the suspension of her real estate broker's license "because of the unavoidable emergency situation involving the illness of the attorney's wife which would prevent him from attending the hearing." *Ullmen*, 67 Ill. App. 3d at 520. The motion for a continuance was denied by the committee and the plaintiff appeared at the hearing without counsel. *Id*. The appellate court found that the committee abused its discretion in denying the motion for a continuance, concluding that an illness in the extended family of a party's attorney was a valid reason for a continuance. *Id*. at 522. In contrast, in the present case Marc Realty did not present a valid reason for dismissing its attorney on the day of trial, so we are unpersuaded by *Ullmen*.

¶ 46 Finally, in *Ryan*, the circuit court entered a default judgment for the plaintiff and denied a petition by the defendant to vacate the judgment. *Ryan*, 47 Ill. App. 2d at 220. The default judgment was entered after an *ex parte* hearing at which defense counsel was not present because he was on trial in federal court at the time of the hearing. *Id*. at 221-22. On appeal, the appellate court reversed the circuit court's ruling, concluding that because defense counsel was "actually engaged in the trial of a case in the Federal District Court," and because the other attorneys at the firm were unavailable for trial, defense counsel had a legitimate excuse for not being present at the hearing. *Id*. at 228. We find *Ryan* to be inapplicable because here, Marc Realty's attorney was not otherwise engaged; rather, he was ready to proceed to trial and Marc Realty chose to terminate his representation the day of trial.

¶ 47 To the extent that the parties rely on cases from jurisdictions other than Illinois to support their arguments, we decline to consider them. Although such decisions may be considered as persuasive authority, it is only in the absence of Illinois authority on the point of law in question that we are to look to the law of other jurisdictions. *Allstate Insurance Co. v. Lane*, 345 Ill. App. 3d 547, 552 (2003). Here, as the Illinois authority is more than sufficient on this point of law, we see no need to consider the decisions from other jurisdictions.

¶ 48 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 49 Affirmed.